## Thomas Hazard *vs.* William Martin.

ADDISON,
January,
1829.

When an administrator conveys a farm subject to the widow's dower, and possession of the two thirds, under a deed, is held over thirty years,—presumption of regularity of the administrator's proceedings, prior to his deed, arises in favor of the reversion of the dower.

This was an action of *Trespass quare clausum fregit*, said to have been done on certain lands in *Ferrisburgh* ; and, on trial in the County Court, April Term, 1827, the defendant obtained a verdict ; and exceptions were taken to sundry decisions of the Court ; and upon those exceptions, as allowed by the Judges, a hearing was had last term, and another full hearing this term.

It appears by said bill of exceptions, that on trial, the plaintiff, in order to prove his title to the premises in question, read in evidence, 1st. a deed from *Abel Thompson* and *Elizabeth Chase,* administrators upon the estate of *Abraham Chase,* conveying the whole real estate of said deceased, with the reversion of the widow's dower therein, to *John Robinson* and *Rowland Hazard*— said deed dated the 24th day of December, A. D. 1792.    2d. the copy of record of a deed, from the said *Hazard* and *Robinson* to *Robert Hazard,* of the same premises, dated 17th of February A. D. 1800.    3d. a deed of said premises from said *Robert Hazard* to *Wing Rogers,* dated the 16th day of December, A. D. 1806.    4th. a deed of the same premises from *Wing Rogers* to the plaintiff, dated September, 9th, A. D. 1815.

The plaintiff also produced the records of the Probate Court for the district of *Addison,* which showed that administration upon said estate was given to the said *Abel* and *Elizabeth,* in January, A. D. 1792—That the widow's dower therein was set out in November following—That the inventory and appraisal of said estate, and the report of the commissioners, were returned; all which were duly recorded—That the avails of the sale of the real estate of said deceased considerably exceeded the appraisal thereof ; that the same were specifically accounted for by the administrators in their final settlement, with the Probate Court, of their administration accounts—That the estate was declared insolvent ; and that, by order of Court, the administrators ordered to pay 19 s. 1 d. on the pound.    But it did not appear, in the records of said Court, that any order was made by said Court, authorising or directing the sale, or the manner of the sale, of the real estate of said deceased.

The plaintiff also introduced, as evidence, a memorandum in the hand writing of the clerk of said Court, in 1792, and preserved in the files of the papers relating to the administration of said es-

ADDISON,
January,
1829.

Hazard
vs.
Martin.

tate, in the words and figures following, viz. "Dec. 22d, 1792. *Judgt. of Court—Estate insolvent, and administrators ordered to sell the real estate.*"

The plaintiff also proved, that the premises, on which said tres-passes were committed, were part and parcel of the dower set out as aforesaid—that said widow possessed her said thirds to Sept. 1823, when she deceased, and the plaintiff, as also the defendant, took immediate possession of the same ; and that the plaintiff, and those under whom he claimed, possessed the other two thirds of said estate, undisturbed, from the sale of said administrators in Dec. 1792, to the commencement of this suit.

The defendant claimed the premises in right of his wife, as an heir to the estate of said *Abraham Chase.*

The plaintiff proved the trespass complained of, and requested the Court to charge the jury,

1st. That, under the statute, in force at the time of the said administrator's sale, no order of Court of Probate was necessa-ry to give validity to the sale.

2dly. That, if they were satisfied, that such order was actually made, they were at liberty to find for the plaintiff, although it did not appear that said order was actually recorded.

3dly. That, under the circumstances of this case, and from the long possession of the plaintiff, and his grantors, of the two thirds of the farm under said deed, the jury would be at liberty to presume, whatever might be their opinion as to the fact, or even against the ev-idence of the fact; that such order had been actually made, and re-corded.

The Court refused so to charge the jury, but did charge them,

1st. That an order of the Court of Probate was necessary to give validity to said sale.

2dly. That it was also necessary that such order should be actu-ally recorded.

3dly. That they could make no presumption, as to the premi-ses in question, unless they believed the fact to accord with the presumption. Nor could they legally presume, that the said prem-ises were ordered by said Court of Probate to be sold, unless they were satisfied that such order was actually made, and recorded.

The case came before this Court on a motion for a new trial, founded on exceptions, filed by the plaintiff, to the decision and charge of the Court, as before mentioned.

*Argument of Mr. Phelps, for the plaintiff.*—1. The County Court erred in deciding, that an order of the Court of Probate was necessary to give validity to the sale, under which the plaintiff

claims.　It will be found, by a reference to the act of 1787, (see page 57) under which this sale took place, that no order of sale, from the Court of Probate, was required in such cases : but where the estate was found to be insolvent, it was made the duty of the administrator, by the law itself, to sell the real estate for the payment of debts.　No discretion was given to the Court, as to ordering a sale or not, but the authority of the administrator to sell, as well as the obligation to do so, arose immediately from the statute. It is true, the statute provided, that the Court of Probate might direct the manner in which the sale should be made.　If the Court failed to give such direction, it would not vacate the administrator's authority to sell, but the proper mode of sale would be understood to be in such case, by private sale.

2.　The Court erred in instructing the jury that such order should be actually recorded.　There was no provision at that time requiring the Courts of Probate to keep records of such orders ; and if the order were actually made by the Court, it was a sufficient authority (even if an order were necessary) to the administrator to sell, although such order might not have been entered of record.　At all events, after a lapse of more than thirty years, and a possession in the plaintiff for that period of two thirds of the farm, under the deed in question, the jury should have been left to presume, from the evidence furnished by the record, that such an order was made, although not recorded in terms.

3.　The Court erred in their charge to the jury, on the subject of their right to presume facts in aid of the plaintiff's title.　It will be observed that the Court left no grounds for the jury to make any presumption ; but they were instructed that they must be satisfied before they could find for the plaintiff, not only that an order of the Court of Probate was made, but that it was actually recorded : in other words, that every fact, necessary to the validity of the plaintiff's title, must be proved by direct evidence. There are many cases, where Courts and juries have applied the presumption contended for, in the absence of any direct evidence of the fact.　Facts, grants, deeds, surrenders, common recoveries, and other matters of record, have often been presumed without any evidence which made directly to prove the fact. See *Mayor of Kingston* vs. *Horner, Cowp.* 102.—*Earl* vs. *Baxter*, 2 *Blac. R.* 1228.— *Denn* vs. *Barnard, Cowp.* 595.—*Powell* vs. *Millbank, Cowp.* 103.—*Hasseldon* vs. *Bradley*, 3 *T. R.* 159.—*Parker* vs. *Baldwin*, 11 *East*, 488.—*Fishar* vs. *Prosser, Cowp.* 217.—*Gray* vs. *Gardiner*, 3 *Mass. R.* 399.—*Coleman* vs. *Anderson*, 10 *do.* 105.—*England* vs. *Slade*, 4 *T. R.* 682.— *Stoughtenburgh* vs. *Murray*, 7 *John.* 19.—*McDonald* vs. *McCall*,

ADDISON,
*January*,
1829.

Hazard
*vs.*
Martin.

ADDISON,
January,
1829.

Hazard
vs.
Martin.

10 *do.* 377.—*Hepburn* vs. *Auld,* 5 *Cranch,* 262.—1 *Swift's Dig.* 166—7.—See also the opinion of Swift, J. in *Sumner* vs. *Child,* 2 *Conn. R.* 607.—Thus it appears that grants, deeds, and even matters of record, have been presumed from a long possession, and that in cases where there, is no direct evidence that they ever existed. This is going much farther than we ask the Court to go in this case.

It would be well to inquire, whether what we ask, in this case, is not within the rule laid down by *Justice Gould,* in *Sumner* vs. *Child.* We do not ask a presumption of title from the mere fact of possession. We do not ask the Court or jury to presume a conveyance in the absence of all proof. But we show the appointment of the administrator, on the estate of *Abraham Chase,* the actual insolvency of the estate, an actual sale by the administrator, a return of that sale to the Court of Probate, the adjustment of the administrator's account, in which the proceeds of the sale are accounted for, and the distribution of those proceeds, by order of the Court, among the creditors of the intestate, and the estate ultimately insolvent: and we shew a possession, under the deed in question, acquiesced in by the heirs of *Abraham Chase,* and the defendant, for more than thirty years. And we ask, simply, that the jury may be at liberty to presume, from these circumstances, that the " accompanying requisite," the order of the Court, was had. This is no more than what was done in the case of *Gray* vs. *Gardiner,* and the other analogous cases, the principle of which is unequivocally sanctioned by *Jus. Gould,* in the case alluded to. It may be said, that our possession, not being of the premises in question, affords no presumption in our favor. If, indeed, we relied upon our possession, merely, it would be idle to contend that the possession of one piece of land afforded any evidence of title to another. But in this case, we show a paper title, good on the face of it, and defective, if defective at all, for want of the proof of a preliminary requisite. The presumption asked, and the presumption to be made, if any be made, applies emphatically to the deed. It is not a naked presumption of title, but one in favor of the instrument presented ; and this we think may fairly be made from the facts in the case ; more especially as the defendant, and those connected with him in the estate, have acquiesced in the deed and the possession under it, by the plaintiff, of two thirds of the farm, (all that could be taken possession of) for more than thirty years. It is true, that the possession of the widow, during her life, of the third set to her as dower, can make nothing either for or against the plaintiff's title ; but the possession, so far as it could be had by either of these parties, has been in conformity

with the deed. It will not be denied, that, if the question were as to the two thirds of the farm not incumbered with the widow's dower, the presumption not only might, but would be, made. If it be not made as to the other third, we have this singular result, that a deed, purporting to convey the whole farm, is good and effectual to convey two thirds of it ; but, as to the residue, it is to be considered as void in itself, for want of authority to make it.

ADDISON,<br>January,<br>1829.<br>———<br>Hazard<br>vs.<br>Martin.

*Argument of Mr. Bates for the defendant.*—In this case (as appears by the exceptions to the Judge's charge) the plaintiff's right to recover depends on the validity of an administrator's sale of the land in dispute, in 1792, and three questions arise :

1. Whether such a sale could be valid without any order from the Judge of Probate at that time?

2. Whether it was necessary such order should be recorded?

3. Whether the Judge ought to have charged the jury, that they might, from the antiquity of the transaction—an undisturbed possession of other lands under the same sale, and a minute of the order of sale in the Clerk of Probate's hand writing, &c. *presume*, and find, an order of sale was made and recorded, though they were of opinion no such order in point of fact ever was made?

As to the *first* question—It is manifest, that no principle of the Common Law authorises the administrator to sell land. His authority of course, depends upon the Statute. In *section* 12*th of the Probate Act of* 1787, (on the 57th page of the acts of that session) there is a provision, that, when the debts, &c. of the intestate shall exceed the personal estate, the Probate Judge may order a sale, and appoint a commissioner to sell. In the 13*th section* of the same act, on the same page, it is provided, that, when the estate is not sufficient to pay the debts, it shall be disposed of by the administrator in the best way and manner, as the Judge shall order. These provisions require an *order*, and no other authority to sell land is given.

As to the *second* question—If the Court of Probate was a Court of record, its acts cannot be shewn by parol. And, it is evident the Legislature considered it a Court of record, from its first organization. They appointed a Register, and made it his duty to record its proceedings. They authorised it to imprison—and also to allow appeals. All of which would be gross absurdity, if it were not a Court of record. *See Probate Act of* 1787, *Sections* 1, 6, 10. *Also Review of* 1797, *Probate Acts, Sections* 77, 78, 104. Would it not be extraordinary, at this day, to allow parol evidence of what a Judge of Probate formerly said, or did, to affect the title of real estate ?

ADDISON,
January,
1829.

Hazard
vs.
Martin.

As to the *third* question—It may be first remarked, that, if a presumption was to be made against actual belief upon the evidence, it was for the Court to make this presumption, as matter of law, and not for the jury. It would be strange, indeed, that a jury, sworn to find the facts according to the evidence, should, when the evidence is submitted to them, be instructed to find a fact against it! Such a principle is absurd in itself, and is not sustained by precedents. In cases, where there has been a long possession or use of property, which is not within the purview of the Statute of limitations, such as water courses, or easements, courts of justice will presume a grant, or any other writing or act, necessary to make a title consistent with such possession. But, if the property possessed is of a nature to come within the Statute of limitations, courts will be governed entirely by the statute ; for to go beyond, or fall short of it, would be in effect to legislate—to alter, or to add to, the statute. But, in the last case, as in all others, presumptive evidence may be offered to show that a deed, or grant, or other writing once existed ; but the evidence must be agreeable to the rules of law, and is of no consequence, unless it produce a conviction, upon the mind of the jury, of the actual existence of the fact. Whereas, in the first case, the jury have nothing to do with it ; the Court directing what length of time creates a bar against all claims. These principles, so obviously correct, are very clearly laid down by *Judge Gould, in* 2 *Conn. Rep.* 607, *Sumner* vs. *Child*, and sustained by the authorities there cited.

The present case is decidedly one in which length of time cannot be used as a positive bar, in point of law. Not only, because the statute of limitations applies to lands, which is the subject matter about which these parties are disputing, but because the possession relied on is of another piece of land, and not the one for which this action is brought. It is supported by no precedent ; and it is contrary to all the analogy of the law, that the possession of other lands by other persons, should be the foundation of a presumption, that the plaintiff has a title to these premises ! In all the cases of the kind, it is the actual *use of the identical* property, which creates the title, and limits and qualifies it exactly according to the extent of that use. 11 *East Rep. Daniels* vs. *North*, 372. The very foundation of the principle is " *the quieting men's possessions.*"

The Judge in this case, would have allowed the books, and all the papers, as well as the possession of the other land under the same sale, to go to the jury, as evidence ; and would have instructed them, if they believed the order of sale had been ever made, and recorded, to find accordingly. But the book, on which all the

Probate records of the period were kept, being produced, nega-tived the presumption of such a record; and the counsel for the plaintiff insisted, that the jury ought to be instructed, that they might presume the order and record against their actual belief. It is believed, no well adjudged case warrants such a position. The case of *Sumner* vs. *Child,* above quoted, is an authority against it. *Judge Swift* was in the minority in that case, and, although some parts of his opinion might seem to warrant such an idea, other parts are utterly opposed to it. Thus, the whole of what he says, commencing on page 612, shews that a jury, when they have any thing to do with evidence, are to weigh it, and find according to their belief. So also, in the commencement of his opinion in the case of *Bunce* vs. *Wolcot, same book, page* 31.

All the cases, cited on the other side, seem to me to establish the same position. In 1 *Cowper,* 108—9, *Mayor of Hull* vs. *Homer, Lord Mansfield* says, "There is a great difference between length of time, which operates as a bar to a claim, and that which is only used by way of evidence." Again, " But length of time, used merely by way of evidence, may be left to the consideration of a jury, to be credited or not, &c." Again, " Enjoyment under a title, which can only be by record, is strong *evidence to be left to a jury* that it did once exist." The same distinction is maintanied throughout the cases cited by *Sergeant Williams,* 2 *Saunders Rep.* 175. In *Johnson* vs. *Ireland,* 11 *East* 283, it must be re-membered, that the complaint against the charge of the Judge was, that he withdrew the subject from the consideration of the jury. *Lord Ellenborough* says, "It is impossible to say that this was not evidence to go to the jury." " There ought to be another in-vestigation of the case." In 11 *East, Goodtitle* and *Parker* vs. *Baldwin, page* 490, *Lord Ellenborough* observed, they thought it right to send the case to a new trial, that it might undergo fur-ther consideration, and then the defendant might shew the statute to which he had referred, to rebut the presumption, &c." *See also* 11 *Common Law Rep.* 57, *Leavitt* vs. *Wilson.* . The cases in *Massachusetts* and *New-York,* heretofore cited on the other side, all proceed on the ground, that, from the facts proved, a reasonable presumption of the existence of some other fact was raised, from which the jury might fairly believe it did once exist.

Finally, the introduction of the book of records of that period, and there being no pretence of any loss of records, would have rebutted any presumption, had it been proper to raise one arbi-trarily from the possession of the other lands. There is no case, not even of arbitrary presumptions of grants, &c. where the pre-sumption may not be rebutted. This principle runs through all the

ADDISON,
January,
1829.

Hazard
vs.
Martin.

cases of the kind. 12 *Common Law Rep.* 359, *Runcom vs. Cooper.*

HUTCHINSON, J. delivered the opinion of the Court as follows. This case must be decided, wholly, upon the validity of the administrators' deed of the whole farm of *Chase*, the intestate, subject to the incumbrance of the widow's dower, which had before been assigned to her. For, the plaintiff produces no other title to the premises : but regularly traces this title to himself. And, immediately upon the decease of the widow, and consequent determination of her life estate, the plaintiff entered upon the premises, that had been incumbered with said dower, claiming under said administrators' deed ; and the defendant, at the same time, entered upon the same premises, claiming them in the right of his wife, who was heir at law, or one of the heirs at law, of the said *Chase*, the intestate. If, then, the deed from the administrators fail, for want of sufficient showing of the right of the administrators to convey, or of their compliance with the prerequisites of law before they conveyed, the verdict must stand. But if sufficient were shown, under all circumstances, to perfect the plaintiff's title in the reversion of the widow's dower, a new trial ought to be granted. The objections to the validity of this deed are, that there is found no record of any order of sale from the Court of Probate, authorising said administrators to convey said land, nor any record in the Probate office, showing that the Court directed any order to issue.

The plaintiff contends that, by the Probate law then in force, the administrators might convey without any order from the Court of Probate. Upon this point there can be no doubt but that a careful Judge of Probate, who should have realized the importance of having every thing, pertaining to the titles to real estate, appear of record, would cause every thing done in his office relating to real estate to be recorded. And, the very circumstance, that the statute, in express terms, directs the recording of wills and distributions, would naturally remind him of that necessity. And, if a record should be made at all, those things should exist which ought to appear of record : And, if any thing should there appear of record concerning the sale of land, it should be the necessity of a sale, and the issuing of an order, which probably ought to be returned into the office with some certificate of the sale upon the same. This is an allusion to matters natural, and proper. But, the statute is so vague in its requisitions, were I sure there was a general understanding in the Probate Courts, at that period, that no such matters should exist, or should appear of record, but that the administrator might deed without an order; I would

not, at this late day, decide the titles void, that were acquired un-
der views of this kind, entertained by those who then administer-
ed the laws, and for which titles a full and *bona fide* consideration
was paid.

ADDISON.
*January,*
1829.

Hazard
*vs.*
Martin.

There is ground to suspect that the Judge of Probate, in this
district, entertained such views, and practiced accordingly ; but, how
general the same course was pursued, elsewhere, does not appear.

But there is no ground to say, that this statute required the or-
der of sale itself to be recorded. And, it is presumed the
most perfect records in the state show no practice of recording
such orders. They only show that an order issued to sell the
whole of the real estate of the deceased, or so much of it as would
raise such a sum (as the case may be.) And, when the sale is
made, and the order returned, still it is not recorded, but placed
on file. And the record, if perfect, only states, that the administra-
tors returned their order of sale, that before issued, with a return
thereon that they had sold the estate, &c. for such a sum. That
makes the administrators accountable for the amount of sale. And,
if that order of sale could now be found among the Probate files,
that would complete the title of the plaintiff. Or, if it were found
among the waste papers of the administrators, it ought to have
the same effect. The Probate records should show the necessi-
ty of a sale of real estate. It is well if they show that a sale has
been effected : but the deed conveys the title to the purchaser.

There is, however, no necessity for any definite decision upon
the requisitions of that statute, with regard to an order, for an-
other point is raised in the case furnishing a *salvo* for any defects in
these Probate records.

The case shows the appointment of the administrators—the re-
turn of an inventory—the representation of the estate insolvent—
the return of the list of claims—that all the property was insuffi-
cient to pay the debts—that a minute was found in the Probate
files, in the hand writing of the clerk, relating to the administra-
tion of said estate, as follows—" Dec. 22d, 1792, judgment of
Court, estate insolvent, and administrators ordered to sell the re-
al estate." This is such a minute as was proper for the clerk to
make, and from which he ought to have made a record, at large,
of what was done, and ordered by the Court : but the production
of the records, as they are, without this matter upon them, tends,
in some degree, to negative the clerk's having done his duty in this
respect, though he might have recorded it elsewhere. The case
further shows, that the widow's dower was assigned her, in Sept.
1792 ; and that, on the 24th of Dec. 1792, two days after the date
of said memorandum in the hand writing of the Probate clerk,

ADDISON,
January,
1829.

Hazard
vs.
Martin.

the said administrators gave a deed of the whole farm of the deceased, subject to the incumbrance of the said dower—That on giving this deed, they received a sum for the land exceeding that at which it was appraised; and, shortly after, accounted before the Probate Judge for all the estate of the deceased; and paid all the debts against the estate, except eleven pence on each pound of the same at the then currency : and that possession was received, with the said deed from the said administrators, of the two thirds not incumbered with the dower, and continued down to, and in the plaintiff, till the time of bringing this action ; and, during all that time, the only defect in the plaintiff's title of record, was, that the record did not show the existence of an order of sale. Now, if the dispute were about these two thirds, and we had no statute of limitations, and the heirs of the intestate had sued the plaintiff, and he in his defence called upon the jury, under the direction of the Court, to presume, that all prerequisites to the giving of said deed by said administrators were regularly complied with, though the evidence of such compliance cannot now be found, in but few cases could the presumption be urged with such propriety and force. It would be perfectly incredible, if the business were not correctly done in the day of it, that the heirs should let their rights sleep for more than thirty years ; that they should make no claim upon the purchasers, nor those claiming under them, till, probably, the administrators themselves, and most of the creditors who had received their debts, have died, and their estates are settled, and no opportunity remains for the present owner to seek remuneration back upon the administrators, if he now loses the land. Such a course is wholly inconsistent with the idea of any radical defect in the proceedings of the administrators, had they been tested while people connusant of the proceedings were living, and could be sought unto for information on the subject.

In such a case there, probably, would be no dispute, but that any thing ought to be presumed to quiet the plaintiff in his possession. It might well be presumed, from the above facts, all was done that ought to have been done to perfect the deed. That an order was regularly made, and acted upon, and returned, but lost by the clerk's neglect, or that every necessary record was itself regularly made upon a book which is now missing. No matter what was necessary, all ought to be presumed, after so long a possession, and such a lapse of time, during which all possibility of doing justice to the purchasers must be forever gone. When the lands in the town are divided among the proprietors, in fact, but not by draught, as the statute requires ; after an acquiescence

ADDISON,
January,
1829.

Hazard
vs.
Martin.

In this irregular division till a share of the proprietors are quieted by the statute, those, thus acqiescing, cannot afterwards claim a division according to the statute. This would operate an injustice which Courts will not permit. Neither would they permit the heirs to revive their claim to said two thirds, after the above facts existed. The doctrine of introducing presumptions to cure defective titles is founded on that substantial principle of justice, that, when a man's rights have slept, till the assertion of them would spread destruction among the rights of others, they must sleep forever. That this doctrine is supported by the salutary rule of evidence, that, from a series of facts wholly inconsistent with the right set up, and these facts permitted long to exist, the jury presume that the right itself is in some way extinct, or has passed to those in possession of it, though the testimony which would show this cannot now be found. Thus, when the heirs neglected for twenty years to attack an administrator's sale, the court so directed the jury, and they presumed, that the administrator had taken the oath and advertised the sale, agreeably to the statute.—3 *Mas. Rep.* 399. So in 10 *Mas. Rep.* 105, there was possession under a collector's deed of more than thirty years standing. The court said the jury were properly instructed to presume the regularity of tax-bills, calculations, and warrants. So in other cases mentioned in 1 *Swift's Digest*, 166–7, in a recovery of forty years standing, a surrender of tenant for life was presumed. So, where a failure of a trustee to convey would have been a breach of trust, his conveyance was presumed after four years. So, from a separate possession of thirty-six years, a deed of partition was presumed.— See 5 *Cranch*, 262. So in 10 *Johns. Rep.* 377, *Jackson* vs. *M'-Call*, the son inherited his father, who died in possession, and possessed eighteen years after the decease of his father, from which a purchase by the father was presumed. So, in the same case, a patent of a lot to J. C., and a deed from him, were presumed after a possession of about forty-six years, though no patent was recorded, where it ought to have been recorded if it issued. So in 4 *Johns. Ch. Rep.* 271, a purchaser of a trust estate, without notice of the trust, occupied it 18 years, and devised it in his will. After thirty years from such purchase, it was holden discharged of the trust. So where the mortgagee has never taken possession, nor demanded rent, nor rent nor interest been paid for twenty years, the mortgage will be presumed to be satisfied. *Jackson* vs. *Wood*, 12 *John. Rep.* 242,—and *Higginson* vs. *Mein*, 4 *Cranch*, 415.—And many other cases show the same decision. See also, 17 *Mass. Rep.* 72.—After a will had been proved twenty years, and the validity of the Probate came in ques-

Hazard
vs.
Martin.

tion, it was presumed, that the heirs were duly notified to be present at probate, and that the absence of the third witness was properly accounted for, though the record does not show it.

Those authorities show, that Courts direct the jury to presume any thing in support of an ancient title, followed by a correspondent possession.

In this case, if the two thirds only were in controversy, the jury might more rationally presume, from the facts in the case, a deed from all the heirs to the plaintiff, or those under whom he claims, than presume that they have suffered a good title to sleep for more than thirty years, with a possession continually running down upon that title.

. It was suggested in argument, that the heir claiming has always laboured under a legal disability to pursue her claim. This does not appear in the case. But, it may be suggested, that it ought to be met with great consideration before it should avail, if it did appear. The later Probate laws have made provision, that the accounts of administrators shall not be allowed, till the heirs are all notified to be present, and that those who are minors shall have guardians appointed, who shall also be notified, that they may be present and object to the accounts : meaning, undoubtedly, that the administration shall not be broken up, or be liable to be broken up, at any period, as the several heirs arrive at full age. At all events, meaning, that the settlements shall not be broken up, so as to injure *bona fide* purchasers, by defeating their titles. In the case before us, the record shows that guardians were thus appointed, but does not show whether they were notified to be present. And, if this were necessary to perfect the title given by the administrators, this also might be presumed.

After these observations, upon the supposition that the two thirds were the subject of controversy, it is proper to enquire whether the case is, or is not, the same, in principle, while the controversy is about the reversion of the widow's dower ? Here it should be remembered, that one deed only was given by the administrators, and that conveyed the whole farm of the *intestate* subject to the incumbrance of the widow's dower. And, if the deed were valid at all, as a deed, it gave as good a title to the reversion of the one third, as it gave of the other two thirds in possession. This reversion was as fully paid for as the other two thirds. The possession of the widow would enure, in making title, if necessary, for the benefit of the owner of the reversion, when such owner is ascertained. Neither the plaintiff, nor the heirs, could enter upon this third to the prejudice of the widow, while she lived. But all who could ever set up any claim against the deed given

ADDISON,
January,
1829.

Hazard
vs.
Martin.

by the administrators, could set it up as effectually with regard to the two thirds, at any time before the statute of limitations had run against them, as they could with regard to the one third, after the decease of the widow. And they as fully yielded to the validity of that deed, while plaintiff possessed two thirds under it, as if he, during the same period, had possessed the whole farm under the same deed. The statute of limitations would not affect the title while the widow lived : but the deed acquired validity every year. If this be not correct, we may as well abandon the doctrine of presumptions altogether. If there be a possession, under the deed, of the particular piece of land in dispute, no presumption is necessary to perfect the title. That is perfected by the Statute of limitations, in as short a period, at least, as would be required to have advantage of presumption. Indeed, in the present case, the statute has run its course twice over, and more too, with regard to the part in actual possession under the deed. Could that have taken place unless the deed conveyed a good title ? It seems impossible. If it conveyed a good title to any thing, it did so to all described in it. There is a case directly in point reported in *Anthon's Nisi Prius, page* 105, and more at large in 7 *Johns. Rep. page* 5, *Jackson, ex. dem. Kip* vs. *Murray*. There the location of *Stoughtenburgh's* patent was proved ; then a lease of the same for a term of years to *Kip*, the ancestor of the plaintiff ; then a contract, made two years after this lease expired, to wit, in 1680, by which *Stoughtenburgh* agreed to sell said *Kip*, all the land in said patent. The plaintiff then proved actual possession, in the descendants of *Kip*, the elder, of part of the land covered by the patent, and that the remainder, being the very land in controversy, had remained vacant and unimproved about 100 years, till 1788, when the defendant took possession. A nonsuit was moved for by the defendant on the ground that the plaintiff had shown no title. The nonsuit was refused ; *Judge Spencer* saying, "Under these circumstances a deed conformable to the agreement must be presumed." That is from an agreement to sell the whole, and long possession of part, while the remainder is unimproved, a deed of the whole must be presumed. The jury did presume this, notwithstanding some testimony of adverse possession on the part of the defendant.— And *Ch. J. Kent*, in delivering the opinion of the Court at bar, in this case, says, "There was abundant reason for the jury to presume a conveyance from *Stoughtenburgh* to *Kip* : on that part there can be no controversy."

That patent was not merely of a farm, but of several farms ; some of which were vacant an hundred years, and never possessed

M

ADDISON,
January,
1829.

Hazard
vs.
Martin.

by the plaintiff, but first possessed by the defendant. In the case before the Court, the whole tract, covered by the deed, is but one farm. It was so possessed by the intestate. It was sold by the administrators, and purchased of them, as one farm. The plaintiff, and those under whom he claims, have held a vested remainder expectant upon the expiration of the widow's life estate, and held the rest of the farm in actual possession; and held all this under one and the same deed; and that has been, rising of thirty years, patiently outgrowing all difficulties, that might ever have arisen from the want of punctual accuracy in the proceedings of the officers in the Probate office, for whose proceedings the plaintiff, at the present day, is not responsible.

We may here stop and enquire what object could be gained by the defendant's recovery in this suit? The heirs have no right to any property of their ancestor, but such as remains after the debts are paid. The case shows, that this property has all gone to pay the debts of the deceased. If this property should thus be wrested from the purchaser, by the defendant as heir, it would be leaving the debts unpaid; not the exact debts, but the amount, that some person must lose, if the defendant holds this land. The case shows the plaintiff to be the person who would thus be the loser. And no doubt can be entertained, but that the facts in this case would support a bill in chancery, in favor of the plaintiff, to compel the defendant to quit this title, or respond her portion of the purchase money and interest. This full expression of the plaintiff's right leads to the enquiry, whether the trial so proceeded that a door of relief is yet open in this action?

The case shows that the Court refused to charge the jury as requested by the plaintiff's counsel—and then states the charge, which, in general, was contrary to what was requested. The Court instructed the jury, that an order of the Court of Probate was necessary to the validity of said sale; and also that such order of sale should be actually recorded; and that the jury could make no presupmtion as to the premises, unless they believed the fact to accord with the presupmtion: nor could they legally presume that said sale was ordered by the Court of Probate, unless they were satisfied that such order was actually made and recorded.

This instruction, viewed in the abstract, seems definite, yet viewed in reference to the case, it is wholly indefinite. The request to charge loses sight of the merits, and claims more than the case required; and the charge is intended to be, and is, nearly the opposite of the request.

The charge, as it appears in the case, is decidedly against the plaintiff: and, it is rather to be inferred from the charge, that the

ADDISON,
January,
1829.

Hazard
vs.
Martin.

Court considered the possession of the two thirds, under the administrator's deed, as forming no part of the facts necessary to afford a presumption in favor of the deed, as respects the holding of the reversion ; for the Court do not refer to that and other facts in the case, and instruct them, that, if they believed such facts, they might fairly presume an order of sale in fact issued. And that was the only fact necessary to be presumed to render the deed valid. In the case of *Bright, Executor,* vs. *Eynon,* 1 *Burr. Rep.* 396, *Lord Mansfield* says, that he left the question of fraud to the jury, but left it without any express direction that the circumstances spoke fraud apparent : and for this reason he was for granting a new trial.

In the present case, though the plaintiff's counsel asked too much of the Court, yet their request included something to which they were entitled, but which was not afforded in the instruction to the jury. And the charge required the actual recording of the order, which the statute did not require. The jury ought to have been instructed, that if they should find the several facts, stated in the case, and relied upon by the plaintiff, such as the necessity of a sale of all the property to pay the debts, the minute in the hand writing of the register and among his files, stating the judgment of the Court, the estate insolvent, and administrators' order to sell the real estate, and that the deed in question was given two days after the date of that memorandum, and that shortly after, all the estate, including the avails of such sale, as accounted for before the judge of Probate, and yet the debts not wholly paid : if they believed all this, and the possession under the deed of the two thirds, as before recited, they might well presume that there was an order of sale, and that all things were as they should be at the time of the transaction, although a record, the most proper evidence of the same, cannot now be found ; and notwithstanding the records of that period are produced which do not contain the fact the plaintiff wishes to prove, as there may have been some other book of records not found at this late period.

And also, that this presumption applies as well, to render the administrator's deed valid, as a deed to hold the reversion of the widow's dower, as to hold the other two thirds ; and that the order of sale need not be recorded ; but it was sufficient if they were convinced that an order issued.

For the want of this, or some similar instruction to the jury, a a new trial must be granted, and the cause pass to the County Court for such new trial.

It will be seen that the Court have attempted no labored distinction between the different kinds of presumptions, contended for in

ADDISON.
January,
1829.

Hazard
vs.
Martin.

argument; but have treated this case as one in which the jury are to find the facts, and draw the presumptions from those facts; and yet a case in which it is the duty of the Court, as much as in any other case, to instruct the jury as to the tendency of particular facts, if proved, to raise the presumptions contended for.*

A new trial granted.

*Hawley* and *Phelps*, for plaintiff.
*Woodbridge* and *Bates*, for defendant.

*I will here add that we have examined the Probate records, that were used on trial, to see how far they tended to rebut the presumptions urged by the plaintiff. We think it selfevident, on inspection of the record, that no record whatever was made, concerning the estate of the intestate, *Chase*, until the whole was settled; and then the whole was recorded at once. The several matters do not succeed each other in the record according to their true dates. There are two chasms in the record, each large enough to admit the recording that an order of sale issued. The record shows the amount allowed the administrators for services and expenditures; but does not contain the items of their account. The whole is by no means formal, nor perfect in substance. And so the same record appears with regard to other estates, at nearly the same period. The defects in such a record do not at all rebut the presumption that facts existed that ought to be recorded.