JOHN DOOLITTLE, LUCIUS DOOLITTLE, JOHN MARSH AND FANNY MARSH, *his wife, v.* BELA HOLTON.

*License to administrator to sell real estate. Presumptions.*

Circumstances under and from which the granting, by the probate court, of an order or license to an administrator to sell real estate, and the regularity of the proceedings of the probate court, and of the administrator, in reference thereto, may be presumed, in the absence of any original or record evidence respecting it.

EJECTMENT for lands in Lyndon which were set out to the widow of Jesse Doolittle, as her dower in his estate, on the 11th of October, 1809. It appeared that the widow, Eunice Doolittle, died in 1848, and the plaintiffs claimed the reversion as heirs of the said Jesse Doolittle. The defendant claimed under a deed from

Nathaniel Jenks, administrator *de bonis non* upon the estate of
the said Jesse, to Oliver Doolittle, dated April 30th, 1810, which
purported to convey, with other lands, the reversion of the widow's
dower.    At the same date the widow, it appeared, conveyed her
interest in the premises to the said Oliver Doolittle, from whom
there was a regular chain of conveyances to the defendant.    The
rights of the parties depended upon the validity of the administra-
tor's deed, above referred to, which the plaintiffs claimed was in-
valid, for want of a previous license.    The cause was tried by
jury, in the county court, at the June Term, 1854,—Peck, J.,
presiding.

It appeared that Jesse Doolittle died intestate in 1807, and that
administration upon his estate was granted, during that year, to
Riverius Burt, who, on the 19th of February, 1808, was licensed to
to sell the real estate of the intestate, but on the 11th of October,
1809, he resigned, and was discharged as administrator, without
having sold the real estate; and on the same day Nathaniel Jenks
was appointed administrator *de bonis non,* who afterwards, on the
30th of April, 1810, sold and deeded the two-thirds of the home
farm, which was not set off to the widow, together with the rever-
sion of the other third, (being the premises sued for,) to Oliver
Doolittle, and on the 20th of the following November, made a re-
turn of said sale to the probate court, which was received by that
court and ordered to be recorded.    From the inventory of the
estate which was returned to the probate court, and the report of
the commissioners, it appeared that the claims allowed exceeded
the value of the personal property appraised; and the testimony
on the part of the defendant showed that Oliver Doolittle and the
successive grantees under him, had been in the continued occu-
pation of all the premises described in his deed, since its date,
claiming title under it; and that at the period of time embraced in
the settlement of said estate and before, and also for some time
after, the proceedings in the probate court where this estate was
settled, were kept very loose,—and that in many cases of sales of
real estate during that period, which were, in fact, made under
proper orders, the orders of sale were not recorded, nor were any
proper entries made by said court in relation to them.

The plaintiffs insisted, and requested the court so to charge, that

no title to the premises was conveyed by the deed of Nathaniel Jenks, as administrator, because there was no license to said Jenks to sell, and he could not legally act under the license of the first administrator, and no proof of any necessity for the sale, and no proof of any bond given by Jenks to account for the proceeds of such a sale. The court declined so to charge, but told the jury that it was necessary, in order to render the said administrator's deed valid and operative to convey any title, that they should find, from the evidence, that an order to sell the real estate in question, including the widow's dower, was, in fact, regularly made by the probate court, after adjudging it necessary, previous to the sale and date of the deed, and that the sale was madè and deed executed by the administrator, in pursuance of such order, and in conformity with it; and also find that such order of sale was granted to Nathaniel Jenks, after his appointment as administrator,—and that he had no power to sell under an order or license granted to the former administrator. The court alluded to, and commented upon the evidence in the case relative to the question whether such facts existed as would authorize the probate court to grant license to sell the real estate in question, and, upon the question whether, in fact, the probate court regularly made such order, or granted such license,—and upon the question whether the administrator regularly proceeded under it;—and told the jury that these were questions of fact, for them to find from the evidence in the case;—and that it was for them to say whether the evidence was sufficient or not; and, in commenting upon the evidence, the court told the jury that, inasmuch as the plaintiffs had no right of action till 1848, to recover the premises in question, on account of the widow's life estate, the mere lapse of time, even coupled with the fact that the defendant, and those under whom he claimed, under the administrator's deed, had been in possession for many years, would raise no presumption against the plaintiffs, nor furnish any evidence of the facts necessary to give validity to the administrator's deed, if no other lands, except such as were covered by the widow's dower, had been included in the sale and administrator's deed; but that, as it appeared that other lands of the estate, not covered by the widow's dower, were included in the administrator's deed, and that such other lands had been held and possessed under

the same deed from the administrator, adversely to the heirs, and without any claim on the, part of the heirs, for so great a length of time, it was evidence tending to raise a presumption in favor of the validity and regularity of the proceedings in the probate court, and the sale by the administrator;—and that this evidence might be weighed by the jury with the other evidence in the case, although no order or license of sale by the probate court, to Jenks, appeared in the records or proceedings of that court; and the court also told the jury that it was claimed by the plaintiffs' counsel that, as there was an order of sale to Burt, the former administrator, and no or-order to be found to Jenks, the presumption was, that Jenks acted under such former order, and that this furnished some ground for such presumption,—and that,· if they found that this presumption was warranted, when taken in connection with the whole evidence on the point, their verdict should be for the plaintiffs; that on the one hand, it was not necessary for the defendant to prove the facts necessary to give validity to the deed of the administrator, by positive and direct testimony, after such lapse of time;—but, on the other hand, it was not enough for the defendant to prove such facts as barely rendered it possible that such facts existed, and such proceedings were had, as would render the administrator's deed valid; but he must go further, and prove such facts and circumstances as were so far inconsistent with the idea that the sale was irregular, and void, as to warrant the jury in finding it proved that such facts existed, and that such proceedings were actually had in the probate court, as were necessary to render the administrator's sale regular and valid.

To the refusal to charge as requested, and to the charge as given, the plaintiff excepted. Verdict for the defendant.

*G. C. Cahoon* for the plaintiffs.

——————— ——————— for the defendant.

The opinion of the court was delivered, at the circuit session in September, by

REDFIELD, CH. J. This case has been a good deal examined by the court at the former hearings. The only difficulty which

seemed ever to exist, as matter of fact, in regard to the regularity of the administrator's sale, was as to the license in fact being issued to the administrator *de bonis non*.  One appearing of record to the first administrator, and none to the second, raises a very natural doubt whether the sale was not, in fact, made upon the former license.  The necessity of some sale of real estate seems to have been apparent, from the debts exceeding the amount of the personalty.  The probate court did order a sale of the real estate, *i. e.*, the farm in question, in general terms.  This would be a sufficient ground from which to presume the necessity of the sale.  Indeed, after such an order, and the actual sale, we should scarcely allow an inquiry into the foundation of such an order.  That being a matter within the exclusive jurisdiction of the probate court, unless the order showed, upon its face, that it was made for some other purpose than the payment of debts, or when other means sufficient existed, we should, I think, not allow the jurisdiction to be defeated, by proof out of the record.  And all deficiencies in the recitals of the order will be supplied by intendment.

And, as it was competent for the court of probate to sell the whole real estate, the same being difficult of division, if they deemed it expedient or conducive to the interest of the estate, a general order of sale of this real estate being made, and the whole being sold, it should be, perhaps, presumed that the sale proceeded upon such judgment and discretion of the probate court, or, upon the necessity of selling the whole for some sufficient reason.

If a license to sell be shown, it will be presumed to have been upon sufficient previous notice, and the other preliminary proceedings to have been regular, the bond and oath of office, &c., as in other cases.  The presumption, *omnia rite acta*, applies with especial force to the proceedings of courts of probate.  And, after so great a lapse of time, although we cannot make any presumption against the plaintiffs, on the ground of possession merely, we certainly should be at liberty to take into account the enhanced difficulty of showing the true state of the facts, as they existed at the time, and the imperfect manner in which the business is known to have been transacted, at that early day, and the probability that if such an order had existed, it might not have been recorded or preserved, and the extreme improbability that if such an order had

existed, and had not been recorded or preserved, that its existence could now be shown.

No part of the evidence admitted in the trial in the county court is specially objected to. It is said it is slight, circumstantial and fanciful, in general terms. But when we come to examine it in detail, and to look into the charge of the court, it seems to us the trial was managed with very considerable care and circumspection. It may be true that the jury have found the fact of a license to Jenks upon very slight grounds, and that the rules for weighing the evidence given to the jury are calculated to make the most of it. We think that is so, and we think it commendable, both in the court and jury. It is certainly very much to be regretted, that after such a lapse of time, when there is every reason to believe that the administrator accounted for the avails of the whole sale, and thus the price of the land came, very obviously, to the use of the heirs, that any technical defect in proceedings should defeat the title, and bring loss and ruin upon those who have trusted to the regularity of these judicial sales.

We could not, we think, suggest any improvement in the mode in which the county court have carried out the purpose of this court, in granting the new trial;* and, the result is certainly one which might have been, and perhaps ought to have been expected.

Judgment affirmed.

* See same case, 26 Vt. 588.