PATRICK STARR & ANOTHER *v.* JOSEPH C. BREWER AND RUTLAND & WHITEHALL R. R. CO.

[In Chancery.]

*Deed. Dower, Reversion of.*

1. DEED—DOWER, REVERSION OF. An administrator's deed, conveying by metes and bounds all the real estate of which the intestate husband died seized. "*except the widow's dower*," conveys the reversion of dower.

2. ADMINISTRATOR'S DEED—PRESUMPTIONS—PROBATE RECORDS DESTROYED. The question between an heir and grantee was, whether an administrator's deed was valid. It appeared that the probate records, from 1826 to 1842, were destroyed by fire; that the intestate, B., deceased in 1829, and his widow in 1882; that E. acted as his administrator, and as such, in 1831, conveyed the land in contention to C.; that the deed was duly recorded; that the orators were in possession, and derived their title through *mesne* conveyances from C.; that the bill alleged that E. was administrator, and that the answer did not deny it; that the Probate Court, soon after the death of said widow, assigned the reversion of dower to the defendant, the only heir of B.; and that defendant had commenced an action of ejectment. On bill in equity to restrain said action; *Held*, that the maxim, *omnia præsumuntur rite esse acta*, applies; that the presumption is that E. was duly appointed administrator; that a license was granted by the court to sell the real estate, including the reversion of dower, at private sale, for the purpose of paying the debts; that he properly accounted; that everything which ought to have been done in perfecting the deed was done; that it was valid, and that the defendant be restrained from prosecuting his action.

BILL IN CHANCERY. Heard on bill, answer, and testimony, September Term, 1885, VEAZEY, Chancellor. Suit discontinued as to the railroad companies, and decree *pro forma* for the orators. The bill alleged, in substance:

That in 1829, one Joseph Brewer, then in life, was seized of about 31⅔ acres of land in said Fair Haven, and that he died in 1829, leaving his widow, Fidelia Brewer, and one son, Joseph Brewer, surviving him; that Barnabas Ellis was appointed administrator, and settled said estate, which was insolvent; that on the 16th of March, 1830, said Ellis was duly authorized to sell so much of the real estate of

said Brewer as should amount to $350, and that on September 6, 1831, said Ellis having advertised said real estate to be sold at public auction, but not being able to dispose of the same judiciously in that manner, did sell and deed to one John P. Colburn all said real estate for $350, except the widow's dower, and that said money was used to pay the claims against said Brewer's estate; that no dower was ever set out to said widow, but that she and one Allard, with whom she had intermarried, on the 20th day of August, 1834, quit-claimed to one Mary White all the right of dower of said Fidelia in said estate; that said Colburn died on December 8, 1831, without having alienated the premises deeded him by said Ellis; that said Colburn's administrators were duly licensed by the Probate Court to sell, and did sell, November 25, 1833, to one Jonathan Capen said real estate, except the right of dower of the widow of said Brewer and said Colburn; that on October 25, 1834, said Capen and Mary White jointly quit-claimed said premises to William C. Kittredge, who became thereby vested with the title to said premises in fee simple, except the right of dower of said Colburn's widow; that said premises passed by several other conveyances to the orators, except four-fifths of an acre deeded to the Rutland & Whitehall R. R. Co.; that although the orators and their grantors have used and occupied said premises about 48 years, yet said defendant, Joseph Brewer, on April 6, 1882, caused the Fair Haven Probate Court to assign to him the reversion of the dower right of said Fidelia Brewer in the estate of said Joseph Brewer, deceased, without any notice to said orators whatever, when, in fact, the orators claim that said reversion was intended to be, and was conveyed in the said deed of said Barnabas Ellis before referred to. That said defendant, Joseph Brewer, brought his suit in ejectment against said orators, which is now pending in Rutland County Court, for the said premises.

Joseph C. Brewer denied, in his answer, that Joseph Brewer's estate was insolvent; that said real estate was ever

advertised to be sold at public auction by said Ellis, or that said Ellis ever made any effort to sell the same at public auction; that said deed to Mary White conveyed anything more than the life estate of said Fidelia in her dower right in said premises; that said Kittredge became vested with the title in fee to said premises except said right of dower of said widow of said Colburn; that said Ellis ever had a license from said Probate Court to sell any part of said premises belonging to the estate of said Joseph Brewer, deceased, to pay the debts of said estate, and if he had such license, if one was ever granted, it gave him no power to sell said premises other than at public auction, and says that said sale made by him at private sale is null and void, and that the orators derived no title under it to said premises; denies that said Ellis ever had any license to sell the reversion of said widow's dower, or that he ever did sell and convey the same, or intend so to do; but, on the contrary, in said Ellis's deed to said P. Colburn he expressly reserves said widow's dower from said conveyance.

The solicitors of the defendant Brewer and the railroad company signed a writing, by which it was stipulated and admitted that Barnabas Ellis was the administrator of Joseph Brewer's estate.

It appeared, that the widow of said Joseph Brewer died in 1882, and that the Probate Court, on the 6th day of April, 1882, assigned to the defendant, Joseph C. Brewer, only heir of said Joseph, the reversion of dower. The order of the Probate Court assigning the reversion was in part as follows: " Joseph C. Brewer * * * presented to said court his verified petition in writing, setting forth that he is the only heir-at-law of Joseph Brewer * . * * [description of real estate]; that said deceased left surviving him a widow, Fidelia Brewer, who was entitled to dower in said real estate; that the debts of said deceased and expenses of administration amounted to the sum of $350, and that Barnabas Ellis, the administrator of said deceased, sold all of said

real estate, except the widow's dower, for the payment of the same; that said widow's dower was never separated, or set out to her, but remained in common and undivided; that said Fidelia has lately died, and praying that the reversion of said dower be assigned to said Joseph C. Brewer."

The other facts are sufficiently stated in the opinion of the court.

*G. M. Fuller* and *Prout & Walker*, for the defendant.

The administrator could not sell the dower. Neither could he sell the reversion of the widow's dower unless his license gave him authority so to do. R. L. s. 2179.

There is no proof that Ellis had a license giving him power to sell the reversion; we can only go by the deed, and that does not mention the reversion. There is nothing to show that it was necessary to sell the reversion in order to raise the $350.

And it cannot be presumed from the fact that the license was not granted to sell the reversion of the widow's dower that he intended to convey it. All the facts and circumstances are against this theory.

The defendant claims further, that it is incumbent upon the orators to show that Ellis had a license to sell said real estate; that he complied with the terms of the same; that in the absence of the order of the Probate Court and the license, and no proof as to the contents of the same, the orators cannot sustain their title; as a naked order or license from the Probate Court to an administrator of a deceased person to sell his real estate is not sufficient to support a title derived from the administrator under said sale. *Clapp v. Gordon,* 1 Aik. 168.

The deed is void upon its face; as it alleges that he was authorized to sell said real estate at public auction, and that is all; yet he says he sold it at private sale. The right and power to sell said real estate was conferred upon the administrator by the license granted by the Probate Court, upon

an order made by said court; and the administrator must comply with the terms of the license and order, and he cannot go outside of it. If he does his acts are void. He has no power except what the law through the action of the Probate Court gives him. *Brown* v. *Van Duzee,* 44 Vt. 529.

*R. C. Abell,* for the orators.

The license from the Probate Court to Barnabas Ellis, administrator, does not appear on the records of the town of Fair Haven. The probate records and files relating to the estate of Joseph Brewer have been destroyed by fire. William C. Kittredge and his successors in the title have all claimed to own said premises in fee simple. Barnabas Ellis continued to live in Fair Haven until about 1860, when he died. He was solvent, and was responsible during the whole period that he lived in the town.

The orators claim:

1. That a court of equity will sustain their title under the deed from Barnabas Ellis, administrator of Joseph Brewer, to John P. Colburn, although the records do not show that it was predicated on a license recorded in the town clerk's office of the town of Fair Haven.

It is evident that it was necessary to sell the real estate of Brewer to pay debts. *See* deed from Ellis to Colburn. .

2. The deed from Barnabas Ellis, administrator of the estate of Joseph Brewer, to John P. Colburn, was intended to convey the entire premises, subject only to the right of dower of the widow of said Brewer. It describes the entire premises by metes and bounds, and the words excepting the dower are apt and appropriate. The dower had never been set out and could not be described in any other way.

The act of the defendant in procuring the order from the Probate Court assigning the reversion of the dower in Brewer's estate to the defendant without notice to the orators, cannot prejudice the orators, and could not affect the title under the deed from the administrator. The Probate

Court is a court of special and limited jurisdiction, and when it exceeds its powers its acts are void. *Hendrick* v. *Cleveland,* 2 Vt. ; *Grice* v. *Randall,* 23 Vt. 243.

The opinion of the court was delivered by

WALKER, J.   This case must be decided upon the validity and scope of the deed of Barnabas Ellis, as administrator of the estate of Joseph Brewer, to John P. Colburn, of the land described therein and in the bill, which is described as being all the land of the deceased, "except the widow's dower," and as being situated in the town of Fair Haven.

The orators trace their title back to said deed, and the validity and force thereof determines the right of the parties.   The heir, Joseph C. Brewer, had no title or interest therein which the Probate Court could have legally assigned to him on the death of the widow of the intestate, if said deed is valid and conveyed the reversion of the widow's dower.

Joseph Brewer died in 1829, and his estate was settled in the Probate Court for the district of Fair Haven, in which he resided at the time of his death.

The objections to the validity of the deed are, *first*, that there is in evidence no record of any order of the Probate Court granting a license to the administrator to sell the land in question; *second*, that no original license to such administrator is produced in evidence; *third*, that, if a license was granted, the administrator, in making the sale, did not follow the directions therein.   The deed is dated the 6th day of September, 1831, and contains the following recital:

" Whereas the honorable Probate Court for the district of Fair Haven, at a session thereof holden at Castleton, in said district, on the 16th day of March, A. D. 1830, on application for that purpose, did license and authorize me to sell at public auction so much of the real estate of the said deceased as should amount to the sum of three hundred and fifty dollars, for the payment of the just debts of the said deceased, with incidental charges; and whereas, having previously

taken the oath by law required, I sold the real estate here-inafter described at private sale," etc.

This deed, with the recital and the testimony of Benjamin F. Gilbert, establishes the fact that Barnabas Ellis acted as administrator of the estate of said Joseph Brewer, and that as such administrator he offered the land described in the deed for sale at public auction to pay the debts of the deceased, and not receiving a satisfactory bid for it, the same was not sold at that time.

The agreed statement of facts filed in the case shows that the probate records of the district of Fair Haven, from the year 1826 to the year 1842, which includes the period of time during which the estate of the intestate, Joseph Brewer, was in process of settlement, are lost and destroyed, and cannot be found, and that none of the original files and records of said Probate Court, relating to the settlement of the estate of Joseph Brewer, can be found, and that no license can be found from said Probate Court to Barnabas Ellis, as such administrator, to sell and convey the real estate of said Brewer; and that said Ellis died in 1860, and that all his private papers, and all the papers relating to the estate of said Brewer, have been destroyed by fire.

The presumption, *omnia rite esse acta*, has been said to apply with special force to the proceedings of Probate Courts. And after so great a lapse of time, although we cannot make any presumption against Joseph C. Brewer, the defendant heir, on the ground of long possession by the orators and their grantors, merely, we are compelled to take into account the impossibility of showing the true state of facts as they existed at the time of the settlement of said Joseph Brewer's estate.

There can be no doubt that the probate judge of the district of Fair Haven, during that period, caused everything to be recorded which the law required to be of record in his office pertaining to titles of real estate. And after the lapse of over fifty years, and the loss of the probate records and

files covering the period involved, the presumption from these facts and the other facts shown in the case is, that everything which ought to have been done in relation to the granting of the license and perfecting the deed was done; that Barnabas Ellis was duly appointed administrator of the estate of said intestate; that a license was regularly granted to said administrator to sell the real estate of the said deceased; that all the necessary preliminary steps to it were regular, and in compliance with the law; that the land in question was deeded by the administrator under the authority of said license; that after making the sale the license was duly returned to the Probate Court by the administrator with a statement of his doings thereon indorsed, and that all were duly recorded in the probate office upon a book which is now lost; also that said license gave said administrator power to sell the real estate either at public auction or private sale, and that the sale was made in strict compliance with the license and the orders of the court contained therein.

The recital in the deed is not conclusive of the directions given in the license as to the manner of sale; for the law did not then require that the deed should set forth the manner in which the court ordered the land to be sold. It is the license itself which determines the manner in which the sale is directed to be made. As the sale was a private sale, the presumption is, as before stated, that the license authorized a private sale; that is, from the facts which appear in the case and the lapse of time, the presumption is that the license was broad enough to uphold a deed given pursuant to a private sale, inasmuch as the law at that time gave the Probate Court power to grant a license to sell at private sale.

And again, if the recitals in the deed were material, after such a sale and lapse of time, we should not allow the title to be defeated by proof outside of the record of the license. All deficiencies in the recitals of an order will be supplied by intendment. Whatever legal order of the court was

necessary to uphold the deed, after such a lapse of time and loss of the probate files and the books of record, is presumed to have been made and duly recorded. No possibility of supplying the lost files and records and doing justice to the purchasers of the property otherwise longer remains; and the law in such case will not allow the regularity of the proceedings of the Probate Court, and of an administrator acting under its order, to be disturbed and broken up by failure to prove them by reason of the loss of the original files and records of the court so as to injure *bona fide* purchasers by defeating their titles.

To hold otherwise would work a great injustice to the orators whose title depends upon the deed in question.

Courts will not permit an heir to come in under such a state of facts and defeat a title conferred by an administrator's deed, regular in form and duly recorded in the registry of deeds, and break up the settlement of an estate.

The doctrine of introducing presumptions to uphold a title in such cases is not new. Judge HUTCHINSON, in *Hazard* v. *Martin*, 2 Vt. 77, says: " It is founded on that substantial principle of justice that when a man's rights have slept till the assertion of them would spread destruction among the rights of others, they must sleep forever."

We think that the deed in question must be upheld as valid upon numerous authorities in this State and other States; see *Hazard* v. *Martin,*supra; Doolittle* v. *Holton*, 26 Vt. 588; *Same* v. *Same*, 28 Vt. 819; *Townsend* v. *Downer's Est.* 32 Vt. 183; *Gray* v. *Gardner*, 3 Mass. 399; *Colman* v. *Anderson,* 10 Mass. 104; *Blossom* v. *Cannon*, 14 Mass. 176; *Winkley* v. *Kaime*, 32 N. H. 268; *Coxe* v. *Deringer*, 78 Pa. 271; *Simson* v. *Eckstein*, 22 Cal. 580; Lawson's Presumptive Ev. 419.

The recital in the deed and the parol evidence show that the sale of the real estate was made for payment of debts; and as it was competent at that time for the Probate Court to order the sale of the real estate, including the reversion

of the widow's dower, for payment of debts, it is presumed, in the absence of the record by reason of its loss, that the license authorized the administrator to sell all of the real estate including the reversion of the widow's dower, for the purpose of paying debts allowed against the estate of the intestate.

It is contended by the defendant that the description of the land as given in the deed does not include the reversion of the widow's dower; that the words of the exception in the deed, " *except the widow's dower*," include not only the widow's right to the use of one third of the real estate during her life, but also the reversion thereof. We do not think this contention can be sustained. Here the whole parcel of land was described by metes and bounds, and as " being all the real estate in Fair Haven whereof the said Joseph Brewer died seized except the widow's dower."

The encumbrance that was left on the property was simply the widow's dower. The manifest intention of the description was to except only the widow's right to the use of a third of the real estate, described, during her life. The words were apt, and such words as are commonly used in describing a widow's right to the use of one third of the real estate left by the deceased husband during her life.

They are not fairly susceptible of any other construction. They are not descriptive of a piece of land in which the widow had only a life estate, but of the life estate itself. And we think the words of the exception taken alone, and especially so when taken in connection with the words used in the granting clause of the deed, must be understood as referring to the interest which the widow had in the land described, and that the exception is limited to that interest.

It is manifest from the evidence and surrounding circumstances that the reversion was as fully paid for as the other two thirds of the parcel; and the presumption is that the administrator fully accounted for the avails of the sale of the whole and that the same were applied, by order of the

Probate Court, towards the extinguishment of the debts of the intestate. The defendant obviously has not by the deed of the reversion of the widow's dower been deprived of any legal right or interest therein, as the heir of his deceased father.

The result is that the decree of the Court of Chancery is modified and cause remanded with a mandate that a decree be entered for the orators in accordance with the foregoing views of the court, holding that said Ellis's deed as administrator of the estate of Joseph Brewer to John P. Colburn, dated September 6, 1831, of the parcel of land described therein, is a valid administrator's deed executed according to the requirements of the license authorizing the sale and conveyance, and conveyed all the parcel described, subject only to Joseph Brewer's widow's right of dower therein; that the defendant, Joseph C. Brewer, has no right or interest therein as the heir of Joseph Brewer, and that he be perpetually enjoined and restrained from further prosecuting the ejectment suit named in the bill of complaint against the orators, and from interfering in any way with the orators' exclusive enjoyment of said premises as against him under his claim as heir of said Joseph Brewer or under any assignment of said premises or any part thereof to him as such heir by the Probate Court.