HANNAH TOWNSEND *v.* THE ADMINISTRATOR OF THE ESTATE OF JOHN DOWNER.

*Tax sale. Adverse possession. Ejectment. Presumption of a deed. Married woman. Probate court. Wills. Jurisdiction.*

The validity of a tax sale will not be presumed from the mere deed of the collector unaccompanied with extrinsic evidence that any of the prior proceedings, requisite in the case of a vendue sale, were taken, or if any were taken, that they were carried on in a legal manner in any particular.

Neither, in an action of ejectment, will any presumption be made in favor of the validity of such a deed, merely because the party claiming under it proves an adverse possession to the title of the other party, if such adverse possession be for a less period than that prescribed by the statute of limitations as a bar to the other party's claim.

The defendant in ejectment may, for the purpose of defeating the plaintiff's recovery show even by *presumptive* evidence an outstanding title in another, though the defendant be in no way connected with such title.

In such actions circumstances, though in themselves slight and trivial, yet if accompanied by long and peaceable possession, should be allowed to go to the jury as evidence for the defendant to prove the presumed existence and loss of deeds or other instruments.

The circumstances detailed, which in this case were held proper to go to the jury in connection with the fact of long and peaceable possession, as evidence tending to raise the presumption of a grant.

The presumption of a grant from such circumstances is one of fact and not of law.

In cases not within the statute of limitations grants are presumed, or proved by mere length of possession and without auxiliary circumstances.

Townsend *v.* Estate of Downer.

But in cases within the statute of limitations mere length of possession, however great, will not be sufficient to raise the presumption of a grant, unless the possession is for as long a period as that required by the statute to constitute a bar to a counter claim. But in such cases, where there has been a long and peaceable possession of land consistent with the grant to be presumed, and there are other circumstances which make it reasonable to believe that such grant was actually made, but through great lapse of time, or other causes, the proper evidence of such grant is probably lost or destroyed, then the length of possession and the auxiliary circumstances should be allowed to go to the jury, and they should pass upon the question whether a grant has probably been made.

If a deed conveying an entire tract, or several different parcels of land, is sought to be proved by presumptive evidence, possession by the grantee of a part of the tract, or of some of the parcels, claiming under the deed, is evidence to prove its existence in a suit, in which the title to a portion of the tract, or to a separate parcel, comes in question, although there has been no actual possession of the portion or separate parcel sued for.

Though the ancient record of a deed improperly acknowledged is not in itself evidence of the execution of the deed, yet such record, in connection with long and undisputed possession consistent with the deed, and other circumstances which tend, as matter of fact, to show the probable execution and loss of such a deed, is admissible as evidence to go to the jury upon the question whether they will presume the existence and loss of the deed.

The fact that infants and married women own proprietary rights in townships does not prevent their being bound by the acts of the proprietors in making divisions at legal meetings, or by subsequent acquiescence in such a division.

When a will executed in another jurisdiction has been there proved and allowed, and a probate court in this State has allowed a certified copy of such will, and the foreign probate thereof, to be allowed, filed and recorded here as an original will, it will be presumed that the probate court had jurisdiction of the will until the contrary appears.

All objections to the validity of the authentication of the foreign probate of the will must be taken in the probate court or they will be considered as waived.

EJECTMENT for lot No. fifty of the eighth division in that part of Burlington now annexed to Williston, containing twenty-three acres. Plea not guilty and trial by the court at the November Term, 1857, BENNETT, J., presiding.

The plaintiff introduced in evidence a certified copy from the records of deeds, &c., in the town clerk's office in Williston, of a certified copy of the record of the proceedings of the probate court for the district of Chittenden on the 19th of September, 1849, allowing a copy of the will of Thomas Youngs to be filed and

recorded in that court, and allowing and approving such will. The copy so presented was certified by William Cogswell, County Judge of Queen's county, New York, to be a true copy from the record of the probate of the will of Thomas Youngs in the sur-rogate's court of that county. In the body of the certificate the attesting officer was described as " county Judge of said county, performing the duties of surrogate and acting as clerk of the surrogate court." From this certified copy it appeared that this will was executed in the State of New York September 10, 1792, was duly proved in the surrogate's court for Queen's county on the 5th of September, 1797, and that it was executed by the testator in the presence of three subscribing witnesses. In it the testator devised to the plaintiff "a certain right of land which I (the testa-tor) purchased lying on the main supposed to be in the State of Vermont."*

The plaintiff also introduced in evidence the record of the original charter of Burlington dated June 7th, 1763, in which the name of Thomas Youngs appears as one of the grantees, also the proprietors' records of Burlington showing a draft of the lot in question to the original right of Thomas Youngs in the eighth division of lands among the proprietors made February 19th 1801, together with a record of the survey of said lot, and no question was made by the defendant but that this lot with oth-ers was set off by an act of the legislature from Burlington to Williston in 1797. From the proprietors' records it appeared that the first seven divisions of lots were all made in June, 1798, and that in such divisions no lots were drawn to the right of Thomas Youngs or of twenty-eight others of said proprietors, but that lots were drawn in said division to the rights of all the remaining proprietors.

The plaintiff also introduced certain testimony tending to show that the testator, Thomas Youngs, died in Queen's county, New York, on Long Island, in 1797, that he was the same Thomas Youngs described as one of the proprietors of Burlington in the charter of that town ; that the land devised by him to the plain-tiff as above mentioned was his right as one of the proprietors of

* This devise is not void for uncertainty. *Townsend* v. *Downer*, 23 Vt. 225. REPORTER.

the town of Burlington; that from the death of the testator until August, 1843, the plaintiff was a married woman; that the land owners in Burlington had always uniformly acquiesced in the correctness of the eighth division of lots in that town, (and the defendant, by cross examination of the same witness, showed a similar acquiescence in the correctness of the seven prior divisions;) and that the defendant was in possession of the premises in dispute in 1849, at the time of the commencement of this suit.

The defendant introduced in evidence the following extract from the proprietors' records of Burlington:

"On the 16th of June, 1798, at a meeting of the proprietors of the township of Burlington in the county of Chittenden and State of Vermont, the following proceedings were had.

Whereas, it appears that Ira Allen of Colchester, in the county aforesaid, has been a considerable land owner in said township of Burlington, and hath pitched a considerable part of the lands in said Burlington, and by himself and others holding under him hath taken possession thereof, and as the said Ira Allen hath generally avoided mentioning the name of the original grantee in his deeds of conveyance much difficulty would arise in dividing the lands so pitched and taken possession of by the said Ira Allen, and others holding under him, to any particular rights. Therefore, voted, that William Coit, Stephen Pearl, and Zaccheus Peaslee be a committee to ascertain the number of rights of land that the said Ira Allen hath owned in said Burlington, and also ascertain the quantity of lands that hath been pitched by the said Ira Allen in said Burlington, and report the same to the proprietors as soon as may be.

At an adjourned meeting of the proprietors aforesaid held on the 18th of June, 1798, the following was done:

Messrs. William Coit, Stephen Pearl and Zaccheus Peaslee, being a committee elected for that purpose, reported to the proprietors that by the records of said Burlington in the town clerk's office of said town and other documents, it appears that the original rights of the following proprietors of said township of Burlington have been deeded to the said Ira Allen, viz:" (naming twenty-nine of the proprietors and among them Thomas Youngs.) "And that it also appears that the said Ira Allen hath pitched,

and by himself and others hath taken possession of the full complement and proportion of lands belonging to said rights, which said lands so pitched and taken possession of by said Ira Allen and others holding under him include the following lots, to wit:" (naming and specifying two hundred and ninety lots, that being the exact number of lots to which the said twenty-nine proprietors would be entitled in the first seven divisions of lots, containing in the whole nine thousand two hundred and eighty-three and one-half acres of land,) "and to prevent injuries that may arise to the settlers under the said Ira Allen, by voting the lots they live on or improve to any particular proprietor's rights, and it being the sincere wish of the proprietors not to interrupt the settlers under the said Ira Allen, therefore the proprietors present do unanimously vote that all the lots above mentioned be set off, assigned and considered as laid to the aforesaid original rights."

The defendant also introduced in evidence a certified copy of the record in the town clerk's office in Burlington of a deed from Thomas Youngs, Thomas Alsop, John Wright, Edmund Weeks, and John Wright, Jr. to Heman Allen, dated April 10, 1773, conveying all their rights, titles or shares of land as original proprietors of the township of Burlington. From this copy of the record it appeared that to this deed the names of Job Weelsted, Obadiah Wright and John Wright were signed as attesting witnesses, and the only certificate of the acknowledgement or proof of this deed was in these words:

"Memorand. that fourteenth day of April, 1773, personally appeared before me, Henry Cruger, one of his majesty's counsel, for the province of New York, John Wright, and did acknowledge that he signed, sealed and delivered this as his own free will, and did also, upon his solemn affirmation, declare that he saw all the persons whose names are subscribed, sign, seal and deliver this as their free and voluntary act and deed, and also see the subscribing witnesses sign as witnesses. HEN. CRUGER."*

This deed appeared to have been recorded in the town clerk's office of Burlington, February 20, 1795.

The defendant also introduced Charles Adams as a witness,

---

* In *Townsend* v. *Downer*, 27 Vt. 119, this acknowledgement was held to be insufficient to authorize the record of the deed in this State; and therefore that the record did not prove the existence of the deed.—REPORTER.

who testified that he had been in the practice of the law for forty years in Burlington, and had been employed in a large number of land trials in that town, and that the assignment of the twenty-nine rights above mentioned to Ira Allen on the proprietors' records had always been acquiesced in, and that he had not known any of these twenty-nine proprietors to claim any of those rights; but on cross examination he testified that in none of the suits in which he had been engaged was the title claimed to be derived from any one of these twenty-nine proprietors. It also appeared that the town records of Burlington commenced in 1778, so far as any records could be found in the town clerk's office, and that the volume so commencing was numbered volume two, and that a first volume of said records could not be found, but no evidence was introduced that such a volume ever existed except the fact that the earliest volume which could be found was numbered volume two.

The defendant also offered in evidence a copy of the record of a collector's vendue deed from George Cleveland to Thaddeus Tuttle, dated April 4th, 1818, of the lot in question, and sundry mesne conveyances of the same from said Tuttle down to one Moses. Marshall, and an original deed of the same from said Marshall to the defendant, dated December 13, 1847, all which were duly acknowledged and recorded. The defendant also introduced evidence tending to prove that said Tuttle and his successors in the chain of title had possessed the said premises as their own under said deeds down to the present time, and had improved the same claiming to own them, and it was admitted in the case that the defendant and his grantors had been in adverse possession of the premises since 1820, when the lot was conveyed by Tuttle to one Lincoln, who was in the chain of the defendants' title, until the commencement of this suit.

The defendant claimed that from the evidence in the case, the court ought to presume a conveyance from Thomas Youngs, or the plaintiff to Heman Allen, or some of his successors in title, or to the defendant or some one of his predecessors in the chain of title, or an abandonment or extinguishment of the claim or title of the plaintiff in some way.

The defendant also claimed that the record of the probate of

the will of Thomas Youngs in the county of Queens was not legally certified so as to be admissible in evidence, and that the record of the probate court for the district of Chittenden did not show such facts as were necessary to give said probate court jurisdiction to admit said will to probate. These objections were both overruled by the court.

From all the testimony in the case the court found that the plaintiff was the devisee of the lot of land in question under the will of Thomas Youngs, that he was the same Thomas Youngs named as one of the original proprietors in the charter of the town of Burlington, and that the legal paper title to the land in question was in the plaintiff, and that the defendant and his grantors had been in adverse possession of the land in question from 1820 until the commencement of this suit.

The court also held that from the fact that the plaintiff was a married woman from 1797 until 1843, her claim to the land was not barred by this adverse possession ; that no deed should be presumed from her to quiet the defendant's possession ; that the record of the deed from Thomas Youngs and others to Heman Allen, dated the 10th day of April, 1773, was, under the decision of the supreme court in this case, reported in the 27 Vt. 119, inoperative to convey from Thomas Youngs an outstanding title ; that, as the defendant's possession did not commence till 1820, and was not under any claim of title as derived from Heman Allen, but adverse to it, there was no ground for presuming a conveyance of this lot from Thomas Youngs through Heman Allen down to the defendant, especially as Thomas Youngs died in 1797 ; that the case did not show an adverse possession in any one till 1820 ; that no presumption should be set up against the plaintiff, while a *feme covert* in favor of an outstanding title to defeat her right, and that there was no ground to presume a grant from Thomas Youngs, or an abandonment of his title in favor of the defendant, or any of his grantors, and therefore judgment was rendered for the plaintiff, to all which decisions the defendant excepted.

*Roberts & Chittenden,* for the defendant.

*Geo. F. Edmunds, Asahel Peck* and *J. J. Townsend,* for the plaintiff.

ALDIS, J.    This is an action of ejectment to recover lot No. 50 in the eighth division in Burlington, containing twenty-three acres.

The plaintiff, to recover, shows that Thomas Youngs was one of the original proprietors of the town of Burlington ; that in the division of the town the land in question was set to his right, and that he by his will devised that right of land to the plaintiff.

It is admitted in the case, or found by the court, that Thomas Youngs died in September, 1797 ; that at the time of his death the plaintiff was a *feme covert*, and so continued to August, 1843, when her husband died, and that this suit was begun in 1849.

The defendant's possession of this lot began in 1820, under a deed from George Cleveland, a collector of a land tax, and from that time to the commencement of this suit, the defendant or his grantors have held adverse possession of the lot.

As the plaintiff was a married woman from 1797 to 1843, it is not claimed by the defendant that she is barred of her right by the adverse possession under the statute of limitations.

But the defendant claims,

I. That from the possession of the defendant for twenty-nine years, from 1820 to 1849, under the collector's deed, the court should, presume that the proceedings anterior to the collector's deed were legal and valid, so that a perfect title passed by such deed to Tuttle, under whom the defendant claims.

The defendant has not shown any of these proceedings.    Upon this branch of the case his title rests solely upon his deed and possession of twenty-nine years.

The law has been long settled, that to make a good title under a vendue, the statute requisitions must be proved to have been strictly complied with, and that the general recitals by the collector that he has in all things complied with the statute are not sufficient.    We are not aware of any case in this State where the doctrine of presumption has been applied to cure defects in such titles.    In a case where the collector's deed was fifty-four years old, and the grantee had paid the taxes, the court refused to remedy defects in the title by presumption.    But there had never been any possession under the deed, and it does not appear what the defects sought to be remedied were ; *Reed* v. *Field & Briggs*, 15 Vt. 672.

Townsend *v.* Estate of Downer.

In Mass., *Coleman* v. *Anderson*, 10 Mass. 105, and 14 Mass, 145, sales by collectors have been put on the same ground as sales by administrators, and it has been held that tax bills, valuations and warrants, when not found, might be presumed to have existed, if the jury, from the other facts and proceedings shown, and from the lapse of time, could fairly and rationally so conclude.

Here the entire proceedings necessary to make a legal title by vendue sale will have to be presumed to be correct. Nothing whatever is shown in regard to them. If the previous proceedings had been shown, and had appeared to be correct and legal, except in some formal matter or preliminary requisite, of which the evidence would be like to perish with the lapse of time, then the long possession of the defendant, under a title thus substantially correct and legal, might perhaps have justified the court in dispensing with the customary strictness of proof in the defective points, and in submitting it to the jury to decide, whether compliance in that particular with the statute might not be presumed from the correctness of all the other proceedings, and the long possession and claim under the title. But nothing is shown here but the deed and the mere possession of twenty-nine years; there are no accompanying circumstances to show there was any tax sale, or if any, that it was legal in any particular.

Adverse possession for any period less than the time required by the statute to bar the plaintiff's right, *when standing alone and unaccompanied by other circumstances*, is no ground for presuming a grant, or for supplying by presumption a deficiency in a title. Where mere adverse possession is to pass the title and bar a recovery, the statute of limitations has by express provision specified the length of time for which such possession must continue, and if courts were to presume a grant solely upon the ground of adverse possession for a period less than the statute provides, and so bar a recovery by the true owner, the statute would be defeated. This doctrine was set forth by Lord MANSFIELD in *Eldridge v. Knott*, Cowp. 214, and is now universally recognized; 2 Phil. Ev., Cowan & Hill's Notes p. 356; 1 Greenleaf on Ev. sec. 17; *Wells & wife* v. *Morse*, 11 Vt. 9; *Sumner* v. *Childs*, 2 Conn, 607.

Upon this branch of title the defendant shows nothing but pos-

session to sustain the presumption asked for, and this alone is insufficient.

The defendant relies upon the various facts proved in connection with Ira Allen's title, to support the presumption on this point. But as the title under the collector is in no way connected with the Allen title, but is in fact adverse to it, we do not think that those circumstances tend in any way to aid the presumption that the tax title proceedings were legal and regular.

II. Failing to stand upon the title under the collector's deed, the defendant next claims that the court should have presumed a conveyance from the plaintiff or from Youngs *to the defendant.*

1. The *possession* of the defendant under the tax title is clearly not sufficient to warrant any such presumption, as we have already shown.

2. The possession by Allen and others under him, of the first seven division lots from 1798, the deed from Youngs to Heman Allen of 1773, and the claim and possession of Ira Allen under it, and the division among the proprietors founded upon the assumed existence of such a deed, and the subsequent acquiescence of all the proprietors in such division; these are all acts and proceedings in no way connected with the defendant or his possession. The defendant derives no title from Allen. His possession is as well adverse to Allen as to the plaintiff.

The fact which he asks the court to presume is a grant from Youngs or from the plaintiff to *himself.* He does not claim that the length of *his* possession alone, or even the length of his and Allen's possession (extending from 1798 to 1849, and equal to fifty-one years) alone would be sufficient to raise such a presumption, for the plaintiff, from the decease of Youngs in 1797 to 1843, was a *feme covert* and within the exception of the statute of limitations, and hence, as to her, the lapse of time and length of possession standing alone would not create a bar. But the defendant says, these accompanying circumstances relating to Allen's possession and title, come in aid of the lapse of time and long possession, and all these united justify the court in making the legal presumption of the grant to the defendant. The difficulty with this view of the case is, that the accompanying circumstances have no legitimate tendency to prove the fact to be

presumed.   So far from tending to show a grant to the defendant, they point in another direction, viz: to a grant to Allen, with whom the defendant is in no wise connected by    ˌsession or title.

That the accompanying circumstances which are relied upon in aid of the long possession, must be *consistent with such possession and with the fact to be presumed,* is abundantly settled by all the authorities; *Wells & wife* v. *Morse et al.,* 11 Vt. 10; *Doe* v. *Cooke,* 6 Bingh. 174 ; *Sellich* v. *Starr,* 5 Vt. 255 ; *Ricard* v. *Williams,* 7 Wheat. 109.

If the defendant relies upon his own possession, there are no accompanying circumstances to aid the possession, and mere possession is not sufficient.     ᵖ

If he relies on Allen's possession and the other circumstances in aid of Allen's title and possession, they are consistent with a grant to Allen, but are inconsistent with a grant to the defendant.

Hence, there was no sufficient evidence from which a grant to the defendant could be presumed.

III. The defendant claims that the undisputed possession by Allen and those under him, of the first seven divisions of this right since 1798, the lapse of time and other circumstances shown in aid of such possession, warranted the court in presuming a conveyance from Thomas Youngs to Heman Allen.   Upon the trial in the county court the defendant did so insist.

To understand the proper application of the law to this case, it becomes necessary to note the facts which the defendant claims to have provʌd, and from which he claims to presume a grant to Allen.   These are; 1st, an entry on the land records in Burlington, purporting to be a record of a deed from Thomas Youngs to Heman Allen, dated April 10th, 1773, duly signed, sealed and witnessed by two witnesses, proved according to the laws of New York, where it was executed, recorded in the town records in Burlington on February 20th, 1795, and conveying his proprietary right in Burlington.   It has been decided by this court, 27 Vt. 119, that this deed as recorded is imperfect in this : 1st, that the acknowledgment is not according to the laws of New Hampshire, which then were the laws *de facto* of this State, and ·so was not entitled to registration ; and, 2d, that at the time it was recorded the proprietor's clerk had no authority to record it, his

14

authority to record being granted by the act of 1797, and therefore a certified copy of the record did not prove the existence of the deed.

2. The defendant shows the proceedings of the original proprietors of Burlington at meetings duly called, as appearing in the proprietors' records, in which in June, 1798, they in their votes state, that Ira Allen has been a considerable land owner in Burlington, and has pitched a considerable part of the lands in Burlington, and by himself and others holding under him, hath taken possession thereof; that he has generally avoided mentioning the name of the original proprietor in his deeds to settlers, and hence much difficulty would arise in dividing to any particular right the lands so pitched and possessed by Allen and settlers under him, and therefore the proprietors voted to appoint a committee, of whom Peaslee who had recorded the deed of Youngs to Allen was one, to ascertain the number of rights Allen had owned, and the quantity of lands pitched by him, and report to the proprietors. That on the 11th of June, 1798, the commissioners reported to the proprietors at a regular meeting, that by the records of Burlington in the town clerk's office, and other documents, it appeared that the original rights of twenty-nine proprietors, including this of Thomas Youngs, had been deeded to Ira Allen, and that Allen and those under him had pitched and taken possession of the full complement and proportion of lands belonging to said rights, and then specified the lots in the first seven divisions so pitched and possessed by Allen, making about three hundred and twenty acres to each right. And in order to prevent injuries to settlers under Allen by voting the lots they live on to any particular right, the proprietors present voted unanimously that all the lots above mentioned be set off, assigned and considered as laid to the aforesaid original rights.

3. A deed from Heman to Ira Allen of all his rights in Burlington, dated November 12th, 1777, and recorded February 20th, 1795, the same day on which the deed from Youngs to Heman Allen is recorded.

4. Parol evidence to show that the division by the proprietors had always been acquiesced in, and that the twenty-nine rights set to Ira Allen on the proprietors' books had always been acqui-

esced in, and that none of the twenty-nine proprietors had ever claimed any of their rights.

5. That in the division among the proprietors on the records, no lots were set to these twenty-nine rights claimed by Allen in the first seven divisions, but that in the eighth division of twenty-three acres to a lot, one lot was set against the name of each proprietor.

6. It does not appear that Allen took possession of the lots set to the twenty-nine rights in common, prior to Thomas Youngs' decease, but from June, 1798, to the commencement of this suit, a period of fifty one-years, it appears that he, or others under him, had been in quiet possession of the lots set in the first seven divisions to these twenty-nine rights. Indeed, the first seven divisions could not legally have been set to him, or to settlers under him, in lieu of their drafts, if they had not been in possession of the lots, that privilege being granted only to settlers who "lived on or improved their lots," and being intended to encourage settlement; Acts of 1787 and 1794.

The defendant claimed that this long and peaceable possession by Allen of the lots set to these twenty-nine rights, and all these auxiliary circumstances, would authorize the court to presume that Youngs had deeded his right to Heman Allen, and if so, then Youngs did not own the right at his decease, and so it would not pass by the will to the plaintiff, but would be outstanding in Ira Allen, or his heirs.

The county court do not seem to have passed directly upon the question thus presented by the defendant, whether Allen's possession and the papers and evidence in the case tended to prove, and were sufficient as presumptive evidence to satisfy the court, that Youngs did execute to Heman Allen the deed on record. The bill of exceptions says: "the court decided there was no ground for presuming a conveyance of this lot from Thomas Youngs through Heman Allen *down to the defendant*, as the defendant's possession did not commence till 1820, and was not under any claim of title as derived from Heman Allen, but adverse to it ;" again, "there was no ground to presume a grant from Thomas Youngs, or an abandonment of his title *in favor of the defendant*."

It further says " that the deed from Youngs to Allen of April 10th 1773, was, under the decision of the supreme court, inoperative to convey from Thomas Youngs an outstanding title;" also, "that no presumption should be set up against the plaintiff while a *feme covert,* in favor of an outstanding title to defeat her right."

But the decision in the 27th Vt. does not go to the length of saying that that deed, if proved to exist, would be " inoperative to convey from Thomas Youngs his title to Heman Allen;" but only that, the deed not being entitled to registry, a certified copy of record does not prove its existence.    And although the language of the bill of exceptions is, that the county court held that by that decision the deed was " inoperative to convey from Thomas Youngs an outstanding title," we think it fair, and the only proper construction of that decision, to construe it as meaning the deed *as proved by the record alone,* and not the deed if proved sufficiently by other evidence.    As between Youngs and Allen, the deed signed, sealed, witnessed by two witnesses and delivered, was valid and sufficient to pass the title to Allen, though never acknowledged or recorded; 6 Vt. 532.    And it must have the same effect as against the plaintiff, who is a mere devisee of Youngs, and having no higher right than he or his heirs.    As between Allen and subsequent purchasers and attaching creditors, the deed, *accompanied by possession* by Allen, was sufficient, for the possession by Allen would be equivalent to notice; *Griswold* v. *Smith,* 10 Vt. 452 ; *Rublee* v. *Mead,* 2 Vt. 544.

Indeed, the court in the 27th Vt. say, " the question of presumption, from lapse of time and attending circumstances, is one of fact, to be submitted to the jury, under proper instructions, which was not attempted.    We have no occasion to speak of it farther."    This expressly leaves the case open for the introduction of presumptive evidence to establish a deed or grant from Youngs to Allen.    And the defendant offered the record · of the deed made in 1795, in connection with lapse of time and other attending circumstances, as presumptive proof of such a grant.

If the court had directly found the facts that the presumptive evidence was not sufficient to prove that Youngs did convey his right to Heman Allen, as by the deed on record, that would have

been explicit and a direct reply to the defendant's request on trial. But they seem to have taken another view and to have rested the case wholly on the ground that, as the defendant did not connect himself with or claim under that title, 1st, he could not set it up as an outstanding title, and, 2d, could not establish its existence, as an outstanding title, by presumptive proof.

The defendant's claim that a grant should be presumed from Youngs to Allen may be regarded and has been presented in the argument in two aspects.

1st. That the grant should be presumed as *matter of law;* that these circumstances raise a *conclusive* presumption not to be rebutted. This is the view which has been chiefly urged upon us in the argument.

2d. That the evidence *tended* to prove a grant *in fact,* and therefore the court should have directly passed upon the question and decided whether there was or was not such a deed from Youngs to Allen, and that the court's omission to pass upon this question, upon the ground that an outstanding title could not be proved by presumptive evidence against the plaintiff while a *feme covert,* was error. This second ground of error, as alleged by the defendant, we will first consider. It resolves itself into two questions.

1st. Can the defendant show an outstanding title in Allen by presumption? and, 2d, if he can, did the evidence offered tend to prove the fact to be presumed?

1st. The plaintiff in ejectment must recover upon the strength of his own title, not upon the weakness of his antagonist's. He must prove under the general issue that his own title is a good one, and entitles him to the possession of the premises.

The defendant under the general issue may disprove every fact which it is necessary for the plaintiff to establish. Hence, he may show an outstanding title in a stranger, for this disproves the fact of an existing title in the plaintiff. This rule is founded in a wise policy which discourages litigation as to land titles against the possessor, except where it is carried on by the true owner. It favors quiet and peaceable possession; it says, if the true owner will not disturb the one in possession, no other shall. In all cases where the defendant shows title in another, in order

to defeat the plaintiff, he does not trace the title to himself. If he did, it would be title in himself, not in another.

The very fact that the title is called *outstanding* shows that the defendant does not connect himself with it, and hence the doctrine of the county court must rest wholly on the ground that a defendant in ejectment cannot show an outstanding title *by presumptive proof.*

In this case the plaintiff shows Thomas Youngs a proprietor in Burlington, that this lot was set to his right, and that upon his death in 1797, he devised it to the plaintiff. This is her legal claim of title. If Thomas Youngs in his lifetime deeded away the right to Heman Allen, it is obvious that a link in the chain is out, for then he did not own the right when he died, and there was nothing which could pass by the devisee to the plaintiff. Then at Youngs' death the title to this land was outstanding in Heman, or, rather, in Ira Allen, (for Heman deeded all his lands in Burlington to Ira Allen in 1777.)

Now this is the fact the defendant seeks to establish; and clearly, it is the disproving of a fact material and indispensable to the support of the plaintiff's title.

We think that such a defence, by one who has had peaceable possession under a claim of title for twenty-nine years, ought to be allowed, for if proved, it strips the plaintiff's title bare of all merit and equity; it deprives her of all claim to test the lawfulness of the defendant's possession.

Nor is this all;—the defendant shows by this proof that the plaintiff is not, and that Allen is the true owner; and he may further prove that as between himself and the true owner, (Allen or his heirs) he has acquired the title by adverse possession. It results then in this, either the defendants, by adverse possession, or Allen, by deed from Youngs, is the true owner; the plaintiff has no legal title to the lot. Now may the defendant prove this by presumptive evidence? If not, the plaintiff, who has no title whatever, may get title by recovery *against the defendant,* on the ground that the defendant cannot, as against her, plead the statute of limitations, nor show the true title to be outstanding in Allen, or to be in himself by adverse possession against the true owner of record, Allen; and having thus recovered against the defend-

ant, he may then hold, *as against Allen*, by setting up this adverse possession of the defendant and recovery against him.   So strange and inequitable a result would show the reasonableness of the rule that a defendant may show the title outstanding in a stranger, for that brings the controversy on to the right footing, viz: between the one in possession and the true owner.

If the deed of 1773, now on record, had been acknowledged, so that a certified copy of it would have proved its existence and execution, there can be no doubt but that the defendant might have shown it, and thus have set up an outstanding title in Allen. This is recognized in the decision in this case in the 27th Vt. 120, for the decision of the county court in directing a verdict, could stand only on the ground that the defendant showed an outstanding title, and that judgment was reversed, not because the deed if proved could not avail the defendant, by showing an outstanding title, but because on account of its defective acknowledgement it could not be proved merely by a copy from the record.

But a deed may be proved in various ways ; by the production and proof of execution of the original, by mere production from its proper custody of the original after thirty years from its date, by proof of the loss of the original and of its existence and contents by secondary evidence, and lastly, by presumptive evidence, where there has been a long and undisputed possession according to the deed and from the great lapse of time and from other auxiliary circumstances, the existence and loss of the instrument may fairly and rationally be presumed and actually believed.   Now all these different modes of proof tend to one common result, and are only different ways of reaching the same end, viz : *the actual belief in the existence of the deed.*   If the mind is really convinced of that fact as a fact, not assuming it to exist as matter of law and upon the principle that it is no matter whether it ever did exist or not, but believing that in truth the deed was really executed by Youngs to Heman Allen in 1773, it would seem as if the *result* was the important thing to be considered in deciding upon the rights of the parties, and that the particular mode of proof by which the mind is led to the result, was of no consequence.   We see no reason why a defendant in ejectment should be confined to any particular kind of legal evidence in establish-

ing his defence. If the defence is a good one, and the evidence legally tends to prove the defence and satisfies the minds of the ·triers that it is true, that is enough.

Shall we say, an outstanding title in Allen proved by positive evidence is a good defence; proved by presumptive evidence it is not? If so, the defence would be good or bad, not upon its own merits as an answer to or denial of the plaintiff's claim, but upon the kind of evidence by which it should be proved. Presumptive evidence is often as satisfactory to the mind as any other. It is resorted to, because from the great lapse of time and the negligence with which papers affecting the titles to lands are often kept, losses of the proper muniments of title may be presumed; and thus where a long possession corresponding with the grant to be presumed exists, that, with auxiliary circumstances, is admitted as evidence to supply the defects in the title. Its force as proof depends upon the character of the circumstances. Like all other evidence it may be very strong or it may be very weak. We see no reason why it may not as properly be used to prove an outstanding title, as to prove a title in the defendant. Suppose Allen had been the defendant here. He would have proved the identical facts shown by the defendant, and no others. It is admitted that he, proving, not an outstanding title, but one in himself, might rely on these facts.

Now the evidence is precisely the same, its power of producing belief on the mind the same; it does produce the same belief. Shall we say, the belief in one instance is good defence, in the other it is not? The plaintiff's title is the same in each. She has the same means of proving her title good, and of disproving the defence, in one case as in the other.

It is not a case where she is concluded by the presumption as matter of law, but she is at liberty to show any facts to rebut or contradict the presumptions contended for by the defendant.

The cases cited by the plaintiff to show that the defendant cannot set up an outstanding title, do not apply to this case.

In the execution of trusts, grants, deeds and surrenders of terms are presumed, and where the *cestuis que trust* is entitled to the beneficial use and possession of the property, a defendant in possession is not permitted to set up a nominal title outstanding

in the trustee, to defeat the right of the *cestuis que trust*, for that would be to defeat the owner's real and beneficial title by setting up his own nominal and outstanding title. To prevent this mischief the law will presume a deed from the nominal to the real owner; *England* v. *Slade*, 4 T. R. 682; 7 T. R. 2; Bull. N. P. 110; *Doe* v. *Cooke*, 6 Bing. 174; 12 Ves. 251.

But such cases have no analogy to the one at bar. Even in such the defendant might set up a real outstanding title, adverse and paramount to the title of the *cestuis que trust*. To make such cases apply here, we must suppose Allen to hold the title for the use of the plaintiff, which is directly contradictory to all the evidence.

In all the cases of that class, it will always be found that the outstanding title or term is merely nominal, and that the term has been satisfied, and the real owner entitled to a conveyance.

Nor is this a case where the defendant, having entered under the title or by license of the plaintiff, is estopped thereby from setting up an outstanding title. Such decisions rest on very different grounds.

Nor is the defendant a mere intruder. He holds by claim and color of title as well as possession, nor does it appear that there was ever any possession of this lot prior to his own. As against all the world but the plaintiff he has good title by possession. As against her he has good title by virtue of Youngs' deed to Allen, and adverse possession as against Allen. Or else it is a good subsisting title outstanding in Allen.

The case of *Doe* v. *Cooke*, 6 Bing. 174, has been cited to show that a defendant in ejectment cannot set up an outstanding title by presumption to defeat the plaintiff's apparent paper title. Neither the case itself, nor any of the cases cited in it, establish such a doctrine. In that case, the defendant's possession was not consistent with the fact to be presumed; no possession by those in whose favor the legal estate was held. Mr. Middleditch was the owner, originally, of the premises. He first mortgaged to one of the plaintiffs, then devised his estate to Mangles & Taddy, in trust to sell and pay mortgages, and hold the residue for his wife. His wife died and devised the estate to the other plaintiffs, as trustees. Thus the suit was brought by one of the

plaintiffs and by the trustees of the wife. If the mortgage was paid, then the legal title would be in Mangles & Taddy for the use of the wife, etc.

The defendant in possession without right offered to show that the mortgage was paid, and so the suit should have been brought by Mangles & Taddy instead of the plaintiffs. To show this his own possession was not presumptive proof, for it was not under any title derived from Middleditch. He showed the commencement of proceedings in chancery, and a decretal order to sell the estate and pay off the mortgages, but showed nothing further, and the court in conclusion seem to rest their decision on this point, that he showed only a partial statement of the ground of presumption. It would seem from the case that the outstanding title he tried to set up, was in substance the plaintiff's title, though nominally in other trustees, and hence the court might well say, "that the presumption asked for would rather tend to defeat than to promote the ends of justice."

But if the defendant had set up a title outstanding in persons not claiming under or for Mr. Middleditch or his wife or her heirs, a title adverse and paramount to the plaintiff's in that case, there can be no doubt but that the defendant would have been entitled to have shown it by presumptive evidence.

The case of *Appleton* v. *Holton*, 8 Vt. 241, is cited as being adverse to the views here suggested. But there the defendant attempted to set up mere lapse of time as a bar to the mortgage debt and to the suit brought by the mortgagee. He showed no possession nor any other circumstances tending to prove the debt paid in fact; nor was he in any way connected with the mortgage debt; no possession of the premises by the mortgagor, but on the contrary the possession vacant. Between presumption of payment of the debt in fact, and a presumptive bar by lapse of time to recover on the bond, there is a wide difference. The difference is referred to by the court and makes that decision wholly inapplicable here.

The case of *Schauber* v. *Jackson*, 2 Wend. 14, in the court of errors in New York, is directly in point to show that an outstanding title may be shown by presumptive evidence by one in possession, who is not in any way connected with such title.

The defendant's father went into possession about fifty years before suit brought declaring that he did not know who the owner was, but wished to pay if he could be ascertained, and he and the defendant, his son, had always held by bare possession without color of title.

The plaintiffs claimed title as heirs of Wm Appel, the original patentee. To raise the presumption that Wm Appel had in his lifetime conveyed away the land, or that his executors had done so after his decease, the plaintiff showed that the land in question was reputed to belong to DeLancy and Dubois, and was generally so spoken of, that in deeds of adjacent lands they had been described as bounding on this as Dubois and DeLancy's land, that in a deed of land in the east half of this tract, the west half was designated as Dubois and DeLancy's land, that Mrs Pelte, one of the heirs of Wm Appel, said when speaking of her property that all she had was two houses in New York, that the executors of Wm Appel were directed by his will to sell all his real estate, that Mrs Pelte, in an arbitration bond with one Killam, as to the title of a house in New York, claimed that John Appel, the executor of Wm Appel, had bought it with money belonging to the heirs under the will, that for ninety years prior to suit brought, neither Wm Appel nor his heirs had made any claim or exercised any act of ownership, that the husband of Mrs Bogert, who inherited from Mrs Pelte, was a lawyer in Albany, residing within twenty miles of the land in dispute. No deed or draft or copy of a deed or writing of any kind referring to any deed from Appel or his executors to any person was shown, no such deed had been heard of, no possession by Dubois and DeLancy, or any one under them, no possession by any one claiming under a grant from Appel in any way.

The court held that the evidence above detailed should have been submitted to the jury as presumptive evidence, that Appel or his executors had conveyed away his title, and that the defendant was not precluded from showing that the title was out of the plaintiff, though he was unable to trace it to himself. This case is therefore an authority upon this point, and it forcibly illustrates how, after great lapse of time, and a long and peaceable possession, courts will allow circumstances, in themselves very slight

and trivial, as evidence, to go to the jury in connection with pos-
session and lapse of time, to prove the presumed existence and
loss of deeds or other instruments. See also *Jackson ex dem.
Seylee* v. *Morse*, 16 Johns. 197.

2. Did the evidence offered by the defendant tend to prove by
presumption a conveyance from Youngs to Allen? It may serve
to elucidate this point to consider in what cases the law allows
grants to be presumed, and for what reason resort is had to pre-
sumptive evidence. Some obscurity exists both in the decided
cases and in the elementary treatises on this subject from the
indefinite use of the phrases, " the law will presume a grant,"
" grants are presumed," etc. There is this obvious distinction
in cases.

Where from long possession with or without auxiliary circum-
stances a grant is presumed *as matter of law*, and without regard
to the fact whether such a grant was really made or not, there it
may, with the strictest propriety be said that the law presumes a
grant. In such a case, under the practice in this State, it would
be the duty of the court to direct a verdict,

But where long possession and other attending circumstances
are admitted as evidence tending to show that a grant was *in fact*
made, that it is probable and not unreasonable to believe it to
have been made, there it cannot strictly be said that a grant is
presumed, that the law in such case presumes a grant, but rather
that a grant is proved by presumptive evidence, that the law per-
mits the jury to weigh the evidence, and upon such *presumptive
—not positive*—proof to find the fact. In such a case it is not
for the court to direct or instruct the jury to presume a grant, but
to instruct them that they may upon such evidence find a grant to
have been made, that such evidence legally tends to prove the
grant by presumption from circumstances, and in the particular
class of cases, *stands in place of positive proof*.

We do not understand that there is still a third class of cases,
in which, although the grant is not presumed by the court as pure
matter of law, and is not found by the jury as a fact; still the
court may direct the jury to presume the grant, and thus by the
intervention of the jury, but without the exercise of their judg-
ment upon the evidence, establish the grant as if it were a mere

inference of the law. Language may be found in some books and decisions favoring such a view, but the doctrine is clearly against the whole current of English and American decisions and tends to confound the proper and separate jurisdictions of court and jury. This erroneous view, we think, has arisen from the want of precision in language, when treating of such presumptive evidence and the grants proved by or presumed from it.

In cases *not within the statute of limitations* grants are presumed or proved by mere length of possession and without auxiliary circumstances ; thus where the *claimant* is not within the statute, such is *The U. V. M.* v. *Reynolds*, 3 Vt. 542 ; where the *subject matter* is not included in the statute, such as easements ; or where from *the relation of the parties*, such as tenancies in common, the possession is not *prima facie* adverse. In such cases courts presume grants in analogy to the statute of limitations. Sometimes these presumptions are held to be conclusive, at others open to be rebutted. The line between conclusive and disputable presumptions is not well defined.

There is another class of cases where a grant or surrender will be presumed ; where in the execution of trusts and to prevent a just title from being defeated by mere matter of form, a defendant is not permitted to set up an outstanding title in a nominal trustee to defeat the real title of the *cestui que trust* ; courts of law going upon the ground of courts of equity, that as the trustee is compellable to deed, they will presume that done which ought to be done ; 7 T. R. 2 ; 4 T. R. 682 ; Bull. N. P. 110 ; 12 Ves. 251 ; 6 Wheat. 481 ; 4 J. C. R. 1. These seem to stand upon grounds peculiar to themselves, and are sometimes set up to sustain the legal title, irrespective of long possession.

In cases *within the statute of limitations* mere length of possession, unaccompanied by other circumstances, is not sufficient to raise the presumption of a grant. Where possession has existed for the length of time prescribed by the statute, it becomes a bar by the operation of the statute ; if for a less time, it must be aided by other circumstances or the presumption cannot arise, *Sumner* v. *Child*, 2 Com. 620 ; 2 Phil. Ev. 356, (Cow. & Hill's Notes ;) 1 Greenlf. Ev. sec. 17. But where there has been a long and uninterrupted possession of land consistent with the

grant to be presumed, and there are other circumstances which make it reasonable to believe that such grant was actually made, but through great lapse of time or other causes, the proper evidence of such grant cannot be found and is probably lost or destroyed, there the presumptive evidence is admitted to prove the grant. The reasons for admitting such evidence to supply the lack of the ordinary and positive proof of title are very clearly set forth in the opinion of ARCHER, J., in *Beal's lessee* v. *Lynn*, 6 Harr. & Johns. 361. He says: " Presumption is often resorted to for the purpose of supplying defective evidence, and in this country is not oftener applied to any subject than to supply defective title to lands. It would be difficult to make out the titles to many of the older tracts of lands in this State, by a regular deduction of title deeds, from the patentees down to the present proprietors, without resorting in some stage of them, to presumption. Records may sometimes be lost or destroyed, ancient title papers may be defectively executed, or the proof of them from lapse of time may be impossible, yet in all these cases the possession may have been invariably in the person claiming the land, and in those from whom he derives his title. In such cases, possession which has long been undisturbed, and which is in general the concomitant of title, induces a belief in the mind of title little short of that which would be produced by the adduction of the most undeniable and best authenticated evidences of right. In general, these presumptions are bottomed upon the existence of certain facts, which can leave but little doubt upon the mind of the truth of the fact which we are called upon to presume. They frequently, too, derive their force and efficacy from that vigilance with which the law guards ancient possessions, which sooner than they should be disturbed, presumes that they had in contract a rightful commencement."

So Judge STORY in *Ricard* v. *Williams*, 7 Wheat. 59, says, " Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title and the public policy of supporting long and uninterrupted possession. They are founded upon the consideration that the facts could not, according to the ordinary course of human affairs, occur unless there was a transmission of title to the party

in possession. Nor is it necessary to produce any direct or positive proof either of the existence or the loss of the instrument so proven by presumptive evidence, where from great lapse of time the instrument may well be presumed to have been lost and the circumstances and corresponding possession prove that it once existed. Thus Lord MANSFIELD, in the case of *The Mayor of Hull* v. *Herner*, Cowp. 103, says : " In the case of as supposed by-law usage is allowed to support it, without any proof of the existence of such a by-law, or of the loss of it. But the principle is a right one, viz : in favor of rights which parties have been long in the peaceable and quiet possession of. I have myself taken it to be established in point of law that though the record be not produced, nor any proof of its being lost, yet under circumstances it may be left to the jury whether there is not sufficient ground to presume a charter." Again, "if a foundation can be laid that a deed or record existed and was afterwards lost, it may be supplied by the next best evidence to be had ; or if it cannot be shown that it ever existed, yet enjoyment under a title that can only be by record is strong evidence to be left to a jury that it did once exist."

The books abound with cases in which deeds and grants have been presumed from possession and attending circumstances, where there has been no proof of the existence or loss of the instruments presumed, except what such possession and circumstances furnish. The following are referred to to show that circumstances similar to those shown in this case have been considered as admissible to go to the jury for the purpose of raising such presumptions :—*Jackson* v. *Murray*, 7 Johns. 5 ; *Jackson* v. *Lunn*, 3 Johns. Cas. 109 ; *Jackson* v. *Russell*, 4 Wend. 543 ; *Farrar* v. *Merrill*, 1 Greenlf. 17 ; *Jackson* v. *McCall*, 10 Johns. 377 ; *Beal's lessee*, v. *Lynn*, 6 Har. & Johns. 361 ; *Sumner* v. *Child*, 2 Conn. 631, citing *Bush* v. *Bradley*, 10 Johns. 475 ; *Schauber* v. *Jackson*, 2 Wend. 14. The rule in equity is the same as to the nature and tendency of the circumstances which raise the presumption ; *Bunce* v. *Walcott*, 2 Conn. 27 ; 12 Ves. 239 ; 4 J. C. R. 1. In this State possession for eighteen years and an agreement for a lease, and the right of the lessor to other land depending on the agreement, were held admissible to author-

ize a jury to presume a life lease, although the lessor testified that he had not given one ; *Sellich* v. *Starr*, 5 Vt. 255. In *Stevens* v. *Griffith*, 3 Vt. 448, the plaintiff in ejectment claimed under E. Fisk, an original proprietor by deed from Fisk to Bishop and from Bishop to the plaintiff in 1770. The last deed was not acknowledged, and there was no proof of the death of the witnesses, or of their handwriting or that of the grantor ; but there was a certificate in 1784 to an unauthorized proof of its execution before a justice of the peace, and a record of the deed by the town clerk. The court held that the deed and the certificates were admissible in connection with parol evidence to show that Stevens claimed to own the right of Fisk, attended proprietors' meetings, paid taxes on the right, and that no other person ever claimed or voted on the right, but there was no evidence that Stevens had had possession of any lands under the right ; HUTCHINSON C. J. " Here was a total abandonment by Fisk from the time he conveyed to Bishop, and a well known claim of Stevens sufficiently ancient to afford the presumption of a grant, or so many and such grants as would vest the title in Stevens, and more so still *to afford the presumption of the execution of the deed to Stevens of* 1770."

Without any further notice in detail of particular ·cases, it may be said that the entire current of authority shows that deeds and grants of lands may be shown by presumptive evidence as well as any other, where there has been a possession corresponding to the grant, and where auxiliary circumstances exist making it reasonable to believe that such deed or grant has in fact been made, and where the circumstances are not equally consistent with the non-existence of a grant. It is in determining whether the possession and the circumstances shown in this case *tend* to show that such a deed existed, and whether they may as reasonably be accounted for on the theory that there was no deed as that there was one, that the chief difficulty arises. We proceed to consider the plaintiff's objections under this head.

1. It is claimed that the possession by Ira Allen of the first seven divisions of this right, claiming to hold them under the deed from Youngs of 1773 does not tend to show that the deed was in fact ever made, because there has been no possession by

Townsend *v.* Estate of Downer.

Allen, or any other person, of the eighth division lot claiming under the deed.

If the plaintiff had sued Allen or any one under him for the first seven division lots, it is certain that he could have shown his possession of them, claiming under the deed, with the other circumstances offered in evidence here, as presumptive evidence of the existence and execution of the deed. The proof would have been admissible to go to the jury to convince them there was a deed from Youngs to Allen. If on the proof they had found that the deed really existed, it is clear that they must also have found that by that deed the whole right was conveyed and not merely the first seven division lots. The deed conveys Youngs' right. All the circumstances shown in aid of the possession, (and without which possession is inadequate to raise the presumption of a deed) point to the deed of 1773 conveying the whole right, and to.no other or different grant. If in such a suit Allen got title by possession only, then indeed he would get title only to the first seven division lots; but he gets title through *his deed*, which his possession and the other circumstances prove to exist. And where he gets title by his deed he gets title to all his deed covers. It would be absurd to say Allen proves that he had a deed of the whole right, but he gets title through it only to what he possessed, and loses the rest though the deed conveyed it. So if this defendant, though not connected with Allen's title, shows the same facts that Allen might show in a suit against him and by presumption proves the existence of the deed, that must of necessity show the title to the whole right out of the plaintiff. The deed cannot be good to convey part, and inoperative as to the rest. The deed once proved, and it is no matter whether this is done by positive or presumptive evidence, it conveys whatever its language conveys, and is to be treated and construed like any other deed.

The question cannot be affected by inquiring who it is that offers the evidence, and whether he claims under the deed, for that point has already been disposed of in the examination of the right of the defendant to show an outstanding title by presumptive evidence. The question is simply whether the evidence offered tends to prove the existence of the deed. On this subject

15

we are not left to reasoning alone. We think the authorities are ample to show that if a deed conveying an entire tract or several different parcels is sought to be proved by presumptive evidence, possession by the grantee of a part of the tract, or of some of the parcels, claiming under the deed, is evidence to prove its existence in a suit in which the title to a portion of the tract or to a separate parcel, comes in question, although there has been no actual possession of the portion or separate parcel sued for.

In *Hazard* v. *Martin,* 2 Vt. 77, the deed was void without an order of sale. Presumptive evidence was offered to show that the order was made. The deed covered the reversion of the widow's dower and the two-thirds of the farm. Long and peaceable possession had been had of the two-thirds, but no possession of the reversion. It was objected that the possession of the two-thirds did not tend to show the deed valid as to the reversion, and was not admissible in that suit which was only for the reversion. The opinion of HUTCHINSON, J., is full and direct on this point. He says, " If the deed were valid at all, as a deed, it gave as good a title to the reversion as to the other two-thirds. All who could ever set up any claim against the deed, could set it up as effectually with regard to the two-thirds, at any time before the statute of limitations had run against them, as they could with regard to the one-third after the decease of the widow. And they as fully yielded to the validity of the deed while the plaintiff possessed two-thirds under it, as if he, during the same period, had possessed the whole farm."

This clearly puts the force of the presumption on the ground that possession of part under the deed and non-claim by the other party shows an acquiescence in the deed. Hence he proceeds, " the statute of limitations would not affect the title while the widow lived ; but the deed acquired validity every year. If it conveyed a good title to anything, it did to all conveyed by it."

In *Doolittle* v. *Holton,* 26 Vt. 588, a similar question came up, and the opinion of Judge HUTCHINSON in *Hazard* v. *Martin,* was examined, and as to its bearing on this point, the opinion of the court was suspended. But in the same case, 28 Vt. 819, the charge of the county court upon a new trial was, " that as it appeared that other lands of the estate not covered by the dower

were included in the administrator's deed, and that such other lands had been held and possessed under the same deed adversely to the heirs and without any claim on the part of the heirs for so great a length of time, it was evidence tending to raise a presumption in favor of the validity and regularity of the proceedings in the probate court and the sale by the administrator." Of the charge thus given the supreme court approved, REDFIELD, Ch. J., saying, "we could not suggest any improvement in the mode in which the county court have carried out the purpose of this court in granting a new trial." In the recent case, *Colchester* v. *Culver*, 29 Vt. 111, it became necessary to show that a deed defective in not having a seal, and therefore not entitled to registry, was executed. The deed as recorded conveyed several lots in Colchester, to one of which the heirs of the grantor now made claim.

The court, in considering the evidence tending to show that the deed was in fact executed, after saying that the original deed could not be produced, nor any witness that had ever seen it, speak of the evidence that the grantee under the deed took possession of one of the lots described in the deed, and that the heirs of the grantor had, during the whole time of that possession, laid no claim to the lot, as tending to show that the grantor had executed the deed. There had been no possession by the grantee of the lot claimed by the heirs. The court say, "If the evidence is sufficient to establish the deed as to a part of the premises, it is as to all."

These decisions seem to have settled the question in this State See also *Jackson* v. *Murray*, 7 Johns. 5 ; *Jackson* v. *Lunn*, 3 Johns. Cas. 109 ; *Jackson* v. *Davis*, 5 Cow. 127–8.

2. It is also said that the entry of the deed on the proprietors' records in 1795, does not tend to show that such a deed existed. Standing alone it would not, otherwise the record of a deed not entitled to registry would have the effect of a record of one duly executed. But this entry of record is to be considered in connection with the other facts proved.

It is the characteristic of circumstantial evidence that while the circumstances taken singly and separately prove little or nothing, all of them together harmonize and point to a result, which the mind must adopt as necessarily following from the coinci-

dence of all the facts, all so coinciding that they cannot reasona-
bly be accounted for without the result. Of this entry on the
record it is to be observed that it is an ancient one, free from
suspicion, made on the records of the proprietors of whom
Youngs was one, made at a time when the lands had not been
divided and when the proprietors would be expected soon to
resort to the records in making division of their lands. It can-
not be doubted that the clerk would not allow such a record to
be made on his books unless he had such a deed before him. We
must reasonably presume that Ira Allen, who soon after had pos-
session of the lands, and whose deed from Heman is recorded at
the same date, left this deed for record with the clerk. In 1798
we find that the proprietors at legal meetings for dividing their
lands investigate the subject in order to ascertain what rights
Allen owned, report that he owned Youngs' right and that he
then possessed lands equivalent to the first seven divisions of that
right, (that is three hundred and twenty out of three hundred
and forty-three acres,) refer to the records and other documents
to show his title, and finally set all the lots belonging to this right
in common with twenty-eight other rights which Allen owned, to
Allen, so that in fact no division was made among these twenty-
nine rights of Allen, but they were all set to him as if he had
originally been named in the charter as the proprietor of twenty-
nine rights. The proprietors could not lawfully do this unless
1st, Allen did own the twenty-nine rights, and 2d, he or others
under him had at that time the actual possession of all these lots.
By the old statute regulating the division of lands among propri-
etors, they could only vote to settlers lots in lieu of their draft
when the lots were " settled on, lived on, improved ;" such are
the words of the old act. Now although the record has no force
as a record, is not notice as a record, still the entry of it on the
book of records in connection with all the other facts above
referred to, and the long possession of Allen, must be regarded
as evidence of his claim and color of title. It has been held in
this State that a pitch or survey on record, an unrecorded deed, a
contract to purchase, may be shown as evidence of claim of title.
2 Aik. 155 ; 14 Vt. 400 ; 12 Vt. 251. See also Ang. on Lim.
sec. 404 and notes.

Even a verbal claim of title limits, extends and qualifies possession.

In this aspect the entry on record and the proceedings of the proprietors are very important, as showing the character of Allen's possession, that it was not only under a claim consistent with the grant to be presumed, but inconsistent with the non-existence of the grant, facts without which, as Judge STORY says in *Ricard* v. *Williams*, the presumption cannot fairly arise.

In admitting the record of this deed in connection with the possession and the other circumstances, we cannot overlook the fact that the deed was executed long ago, in 1773, that the defendant never had the custody of it, that from the great lapse of time it may reasonably be supposed to be lost. In the admission of presumptive evidence to supply defects in title, courts are much and reasonably influenced by such considerations.

The difficulty of proving by witnesses the execution of a deed after a long period of time has led to the adoption of the rule, that after thirty years deeds produced from their proper custody and accompanied by possession, may be received without further proof. If the original of this deed could be found among the papers of Ira Allen it could be produced and read without further proof, though never acknowledged and recorded. Yet one cannot but perceive that the security against fraud and imposition would be much less in the admission of such an original than in the admission of the copy here offered, which was spread upon the proprietors' records for the inspection of the world at a time when the attention of the proprietors was called to their titles and to the divisions of their lands, and which has been followed by an undisputed possession for fifty years. It is the long and undisputed possession which, to use the words of Judge PHELPS in *Wells* v. *Morse*, in the 11 Vt. "gives to evidence slight and unsatisfactory in itself, a peculiar force, such as renders it a satisfactory ground of adjudication."

So Mr. Phillips, in his Treatise on Evidence, Vol. 1, p. 457, says "when possession has gone along with a deed for many years, the original of which is lost or destroyed, an old copy or abstract may be given in evidence though not proved to be true, because in such case it may be impossible to give better evidence."

Such entries of record, when connected with other facts, are admissible, upon the ground that they are themselves acts done at the time and having a necessary or natural connection with other circumstances, all pointing to the execution of the deed. They derive their force, not from their being in any sense legal records, but as acts and declarations made at the time and accompanying the possession.

As authorities for the admission of such evidence, see *Allen's lessee* v. *Parish*, 3 Hamm. 107 ; 4 Binn. 314 ; 2 Harr. and Johns. 380, 402 ; and the remarks of Judge KELLOGG in *Williams* v. *Bass*. 22 Vt. 355, that a copy from the record of an unsealed deed if followed by possession would be presumptive evidence of its existence. In *Brown* v. *Edson* 23 Vt. 435, the exclusion of the copies of the deed is put on the ground that there was no possession according to the deed, that the presumption was to *extend* title, not to establish a deed by corresponding possession. In the report of the case the evidence as to the acquiescence is not reported, but the remarks of Ch. J. REDFIELD show that by it the possession was limited to the line acquiesced in and so there was no possession either actual or constructive of the land as to which the grant was sought to be presumed. It is evident in that case if the deeds on record had been followed and sustained by possession, that they would have been treated in such connection and with the proof as to the acquiescence of the proprietors as evidence tending to prove a grant by presumption.

3. It is said. the proprietors' records are not evidence. But the plaintiff was a proprietor, legally notified to attend the meetings and bound by their action in dividing the lands. The division was made on the basis that Allen owned and possessed the lands belonging to this right. If he did not own the right the proceedings were illegal and a wrong to the plaintiff. Yet from 1798 to 1849 she made no objection to the proceedings and never claimed the right. Her disability to sue does not extend so as to preclude her from acquiescence in the division. Though a married woman, she was bound by the legal acts of the proprietors in dividing the town, and by acquiescence in a practical division by them. It was the duty of the proprietors to ascertain what lots settlers lived on and under what rights, in order to make a

proper division. But in doing this they found it difficult, perhaps impossible, to tell what the particular right was under which the settlers under Allen claimed their lots, as in his deeds to them he had not described the names of the proprietors. Hence they divided the forty-one rights Allen did not own into severalty, but left the twenty-nine rights he did own to Allen severed from the other forty-one rights, but not severed as between themselves, leaving him and the settlers under him to divide these lands as they saw fit. This was a most unequivocal recognition of Allen's title to and possession of the lands set to these twenty-nine rights. If any other person was the true owner of any one of these twenty-nine rights, such a division was as to him illegal and unjust.

Nor is this all. At these meetings at which the plaintiff, if a proprietor, was constructively present, the proprietors, after full inquiry on the point, by express vote declare Allen to be the owner of Youngs' right, and that he or settlers under him were in possession of three hundred and twenty of the three hundred and forty-three acres belonging to it.

In the eye of the law the plaintiff was present at these meetings if she was then a proprietor. If the owner of this right she must have known her lands were about to be divided, yet for fifty-one years she never objected to the division or claimed the first seven division lots. That this non-claim shows acquiescence in these proceedings and clearly tends thereby to show the transmission of the title from Youngs to Allen, seems very clear to us, and the only way in which she is to be relieved from the force of the acquiescence is that she was a married woman and could not acquiesce. But the fact that infants and married women owned proprietary rights in townships has never been held to prevent their being bound by the acts of the proprietors at legal meetings in making a division, or by subsequent acquiescence in a division. A contrary doctrine would have made divisions among proprietors almost impracticable. Her exemption from the effect of adverse possession by the statute of limitations, does not relieve her from the natural conclusion to be drawn from her acquiescence in such a division. If she did not seek to have her lands severed from Allen's, but left them to be held in common with him,

the reasonable conclusion is that she knew them to have been conveyed to Allen.

We think, therefore, that the evidence all tended to raise the presumption of an actual grant of the right from Youngs to Allen.

If the evidence so tended and the defendant was precluded from showing the fact, then there was error in the refusal of the county court to weigh the evidence and decide whether such deed was actually made.

IV. The defendant claims that the court should have raised the presumption as a pure inference of law from the circumstances proved, and have held it as conclusive.

Without referring in detail to the numerous authorities on this point, we deem it sufficient to say that we think the presumption as to the deed must be one of fact. The plaintiff claims that there are circumstances to rebut the presumption, and of these and their legitimate force as evidences he cannot be deprived.

The cases of *Hazard* v. *Martin*, *Sellich* v. *Starr*, *Doolittle* v. *Holton*, and others, show that in this State such a presumption of a grant as is here claimed is one of fact and not of law. When the testimony is all on one side and nothing to rebut the evidence tending to raise the presumption, the court may of course direct a verdict, as in any other case where a *prima facie* case is made and nothing to show the contrary. But this is not such a case.

V. The will having been approved by the probate court, and nothing appearing to show that the court did not have jurisdiction, its jurisdiction will be sustained. It is presumed to have jurisdiction till the contrary appears.

The objections to the certificate authenticating the probate of the will in New York, should have been taken in the probate court. The decree of the probate court admitting the will to probate here, cannot be assailed in this collateral manner.

Judgment reversed and case remanded for a new trial.